Argued and submitted August 1, reversed and remanded
with instructions October 27, 1980

MILES, et al,
*Appellants,*

*v.*

BOARD OF COMMISSIONERS OF CLACKAMAS
COUNTY, et al,
*Respondent,*

(No. 78-6-414, CA 16641)

618 P2d 986

Richard P. Benner, Portland, argued the cause and filed the briefs for appellants.

Scott H. Parker, County Counsel, Clackamas County, Oregon City, waived appearance for respondent Clackamas County.

John W. Shonkwiler, Portland, argued the cause for intervenors-respondents. With him on the brief was Morgan & Shonkwiler, P.C., Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Petitioners appeal the denial by the circuit court of their amended petition for writ of review relating to approval of the minor partition (ORS 92.010(4)) of 110 acres of land located in Clackamas County. Respondents are the Board of Commissioners for Clackamas County (Board). Intervenors are the proponents of the partitioning.[1] Petitioners, who own property near the subject property, contend the circuit court erred in denying the amended writ petition because (1) the Board misconstrued applicable law in failing to make a finding that permitted single family residences were consistent with the overall land use pattern of the area; and (2) the Board's findings (a) that the land was unsuitable for production of farm crops or livestock and (b) that the partitions would not interfere with accepted farming practices on adjacent land were not supported by reliable, probative and substantial evidence. We reverse.

Intervenor Don Campbell acquired the subject property in 1968. Until 1973 he managed it as a dairy farm and thereafter used it to raise wheat. Intervenors sought partition of the subject property to create six five-acre parcels with a single family residence to be located on each, and a larger parcel of 80 acres.[2] The Clackamas County Planning Department disapproved

---

[1] The record shows that intervenor Don Campbell acquired the 110 acres in 1968. He divided the property into three parcels and sold these separately on February 4, 1977. The purchasers defaulted after several months and conveyed the property back in July, 1977. On February 24, 1977, the date of the original applications for partition initiated by the realty company, the three parcels were held in separate ownerships. The Board consolidated the three applications to partition the parcels. The transcript of the hearing on March 1, 1978 indicates that one parcel was then held in separate ownership by Don Campbell, one by a third party, and one by both of them. It is not clear from the record what interest Intervenor Edwin Campbell, father of Don Campbell, had in the matter before the Board, although he was applicant of record.

For purposes of this appeal, we treat the 110 acres as a single unit and simply refer to it as the subject property.

[2] The requested division of the subject property was regarded by the County as an application for partition, rather than for subdivision, since each of the original three parcels was to be divided into less than four lots. ORS 92.010(12).

the partitioning. The Board reversed the department and approved the partitions to create five five-acre parcels, on each of which a single family residence was a permitted use, and a single parcel of 85 acres. At the time of the Board's action, the Clackamas County Comprehensive Land Use Plan had not yet been acknowledged by the Land Conservation and Development Commission to be in compliance with the statewide planning goals. The subject property was zoned "Rural Agricultural-One Acre." The three partitions were consolidated for the purposes of the proceedings before the county.

In its order the Board applied the criteria of ORS 215.213(3), a statutory exception allowing single family dwellings not provided in conjunction with farm use to be built on land to be used exclusively for farm use. In response to petitioners' claim that the criteria were improperly applied, intervenors make two arguments why the provision is inapplicable to these partitions: (1) because not all agricultural land is automatically zoned for exclusive farm use, the subject property, which at the time of the application was zoned for lots on which nonfarm uses were allowed, is not subject to exclusive farm use restrictions; and (2) the uses to which the five-acre parcels are to be put are actually farm uses.

■■ A county must comply with statewide Planning Goal 3[3] in approving a partition of land prior to

---

[3] OAR 660-15-000(3) (Appendix A) provides in relevant part:

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agriculture products, forest and open space. These lands shall be inventoried and preserved by adopting exclusive farm use zones pursuant to ORS ch 215. Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise within the area.

"* * * * *

"AGRICULTURAL LAND—in western Oregon is land of predominantly Class I, II, III and IV soils and in eastern Oregon is land of predominantly Class I, II, III, IV, V and VI soils as identified in the Soil Capability Classification System of the United States Soil Conservation Service, and other lands which are suitable for farm use taking

acknowledgment from LCDC that its comprehensive plan is in compliance with LCDC goals. *Alexanderson v. Polk County Commissioners,* 289 Or 427, 434, 616 P2d 459 (1980). Goal 3 requires that agricultural lands "be inventoried and preserved by adopting exclusive farm zones pursuant to ORS Chapter 215." While Goal 3 does not require that all agricultural lands ultimately be zoned for exclusive farm use, it does require that lands suitable for farm use zoning be preserved and maintained for farm use until such time as they have been inventoried and zoned in accordance with the goals. *1000 Friends v. Benton County,* 32 Or App 413, 426, 575 P2d 651, *rev den by opinion* 284 Or 41, 584 P2d 1371 (1978).

Land consisting predominantly of soil classes I-IV is presumed to be agricultural. *Meyer v. Lord,* 37 Or App 59, 67, 586 P2d 367, *rev den* 286 Or 303 (1979). The burden of showing that land contains other than soil classes I-IV is on the proponent of the partitioning. *Hood View v. Clackamas County Comm'rs,* 43 Or App 869, 872, 604 P2d 447 (1979); *Jurgenson v. Union County Court,* 42 Or App 505, 511, 600 P2d 1241 (1979). Here, the Board found only that over 35 percent of the subject property contains soil classes IV, VI and VII. There is nothing in the record that shows that the *predominant* soils are in classes *other* than I-IV. We conclude that this land is subject to classification for exclusive farm use. Before a county may permit nonfarm residential uses on land subject to exclusive farm use classification, the requirements of ORS 215.213(3), included by reference in Goal 3, must be met.

Intervenors contend in the alternative that because the parcels would be partitioned to create small farms, ORS 215.213(3) does not apply. We do not

___

into consideration soil fertility, suitability for grazing, climatic conditions, existing and future availability of water for farm irrigation purposes, existing land use patterns, technological and energy inputs required, or accepted farming practices. Lands in other classes which are necessary to permit farm practices to be undertaken on adjacent or nearby lands, shall be included as agricultural land in any event."

agree that the Board intended to create only small farms. Finding No. Two states:

> "The five parcels of approximately five acres in size are potentially for separate ownerships and to be utilized as small farms or acreage home sites suitable or consistent with type, density, character and life-style of rural land use. The remaining approximately 85 acres will remain in farm use essentially under one family ownership of all large parcels."

Moreover, the Board found that the new lots created by partitioning were generally unsuited for agricultural use (*see* discussion *infra*), which is impossible to reconcile with the claim that the partition was intended to create small farms. Because the order does not restrict the use of the five smaller parcels to farm uses as defined in ORS 215.203,[4] the "stringent requirements"[5] of ORS 215.213(3) must be met:

> "Single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to approval of the governing body or its designate in any area zoned for exclusive farm use upon a finding that each such proposed dwelling:
>
> "(a) Is compatible with farm uses described in subsection (2) of ORS 215.203 and is consistent with the intent and purposes set forth in ORS 215.243; and
>
> "(b) Does not interfere seriously with accepted farming practices, as defined in paragraph (c) of subsection (2) of ORS 215.203, on adjacent lands devoted to farm use; and
>
> "(c) Does not materially alter the stability of the overall land use pattern of the area; and

---

[4] ORS 215.203(2)(a) provides in relevant part:

"As used in this section, 'farm use' means the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the purpose of obtaining a profit in money by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for man's use and animal use and disposal by marketing or otherwise."

[5] *Meyer v. Lord, supra,* 37 Or App at 71 n 5.

"(d) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and

"(e) Complies with such other conditions as the governing body or its designate considers necessary."

■■ Failure to make a required finding under ORS 215.213(3) creates a void in the record and renders the order legally insufficient. *Still v. Board of County Comm'rs,* 42 Or App 115, 119-20, 600 P2d 433 (1979), *rev den* 288 Or 493 (1980) (subdivision order failed to address policy issues of ORS 215.243 as required by ORS 215.213(3)(a)). Here, the Board made no finding that the proposed dwellings would not materially alter the stability of the overall land use pattern of the area. That defect alone would necessitate a remand to make a finding on that issue.

Petitioners also challenge the finding that the land is generally unsuitable for the production of farm crops and livestock. The Board's order states in relevant part:

"5. Testimony and exhibits indicated that the five-acre parcels partitioned from the 110-acre farm are unsuitable for farming in the following respects:

"a. Partition 80-277-B parcels are not and have not been used for agricultural purposes in excess of several years. These lands contain large boulders, both exposed on the surface, as well as, subsurface.

"b. Partition 77-277-B parcels possess excessively steep slopes of greater than 20%-30% at both the eastern and western portions of the parcels. A steep canyon running north and south, with adjacent slopes in excess of 45 degrees lies along and within the eastern portion of the parcels.

"c. Partition 79-277-B parcels possess a stream bed passing through the parcels with medium steep slopes along the eastern portion of the parcel. Soil conditions are subject to insufficient water runoff and have not responded to drainage systems. Overflows occur in the critical spring planting and fall harvest periods.

"d. Soils classifications for these parcels are mapped as having more than 35% of area in classes IV, VI or VII, with S.C.S. soil suitability for farm crops as 'poor.'

"e. Mr. Campbell testified that the revenue to be realized from the sale of the properties would enable him to continue his wheat farming and would enhance the economic feasibility of the farming operation."[6]

■ ■ In a writ of review proceeding, this Court's review is for substantial evidence, "evidence which a reasonable mind could accept as adequate to support a conclusion." *Braidwood v. City of Portland,* 24 Or App 477, 480, 546 P2d 777, *rev den* (1976). The Board's finding of unsuitability of the five smaller parcels is based on three exhibits.[7] The first is an exhibit of six photographs purporting to show the terrain of the five parcels. These photographs were unaccompanied by any testimony in the hearing before the Board. One photograph depicts a solitary boulder; the others show some slopes of indeterminate pitch. The second exhibit is an 8-1/2" x 11" copy of a page from the county's then existing comprehensive plan, showing soils of the county. The entire subject property of 110 acres appears on the page as a red dot about 2-3 millimeters across, located in a small area denominated but not otherwise explained in the key as "non-agricultural soils." Displacement of the dot by a millimeter in either direction would place the smaller parcels in an area denominated "agricultural soils," likewise not explained or defined. The small scale prevents the smaller new lots from even being distinguished.

The third exhibit is a copy of another map entitled "Soil Suitability for Farm Crops." The subject property appears to be located entirely within a category labelled:

"Poor soil suitability for farm crops. These soil associations have more than 35 percent of their areas occupied by detailed soil mapping units that are in

---

[6] *See* n 7, *infra.*

[7] *Paragraph (e), supra* n 6, is not relevant to the question of suitability.

land capability classes IV, VI or VII. The soils may have slopes steeper than 20 percent, good to poor drainage, with poor response to a drainage system, frequent winter overflow, surface soil texture of very fine clay, or depth to hard bedrock of less than 20 inches."

The legend of the map states:

"This single purpose map is based on the land capability ratings that are shown on Table 2 for each of the soil associations. It is intended for general planning. *Each delineation may contain soils having ratings different from those shown on the map. Detailed soil maps are needed for operational planning.*" (Emphasis added.)

These exhibits are not evidence which a reasonable mind could accept as adequate to support the findings and the conclusion drawn from them by the Board, that is, that the smaller parcels are unsuitable for farming. Therefore, the Board's finding of unsuitability is unsupported by reliable, probative and substantial evidence. ORS 34.040(3) (1977).

We do not resolve conflicts in the evidence in a writ of review proceeding. *Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 626, 536 P2d 435, *rev den* (1975). There was undisputed testimony from the proponent of the partition that the smaller parcels are suitable at least for pasture. One of the intervenors stated, in the only direct testimony on suitability:

"As far as these three parcels, or the six tracts, of the total 30 acres there is about 18 in cultivation. The rest of it is stony, up on a hillside and it never would be able to be farmed. Part of it is a 60 degree canyon, you know, of this total 30 acre piece. The 18 acres that's left will run from about flat to up to 30% grade and if you know anything about farming, it's a son-of-a-gun to farm on over a 20% grade. *The ground is very unsuitable for any type of farming other than maybe pasture.* I've tried it and no. It costs a lot of money to go up and down those hills with a tractor, you know." (Emphasis added.)

Moreover, nothing else in the record indicates that the land is unsuitable for the production of livestock. We

conclude that the requirements of ORS 215.213(3)(d) have not been met.

Because of the disposition of this case, we need not address petitioners' other contention concerning the impact of the partitions on accepted farming practices on adjacent lands. The decree of the circuit court is reversed and remanded with instructions to allow the writ and annul the order of the Board approving these partitions.

Reversed and remanded with instructions.