Argued and submitted February 12, affirmed June 9,
reconsideration denied July 22,
petition for review denied September 28, 1982 (293 Or 634)

# LEMMON,
*Petitioner,*

*v.*

# CLEMENS,
*Respondent.*

## (No. 81-056, CA A22430)

646 P2d 633

Richard E. Miller, Eugene, argued the cause for petitioner. With him on the brief were Hershner, Hunter, Miller, Moulton & Andrews, and Bick and Monte, P.C., Eugene.

Michael E. Farthing, Eugene, argued the cause for respondent. With him on the brief was Butler, Husk, Gleaves & Swearingen, Eugene.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

This is a judicial review of an order of the Land Use Board of Appeals (LUBA) that reversed an order by Lane County granting the petitioner a five-year conditional use permit to operate a marine repair shop and storage facility.

Petitioner is an owner of a 15-acre tract in Lane County adjacent to Eugene's city limits and within the city's urban growth boundary. Before 1976, the entire tract was devoted to agricultural use as a family farm. Apparently the one and one-half acre part which is now in controversy was used less intensively than the rest. In 1976, petitioner received a county building permit to erect a large agricultural building on the front 200 feet of the one and one-half acres. In 1977, he received a conditional use permit to operate a marine repair service on the property as a "home occupation" and to utilize the structure for that purpose. At that time the Board of County Commissioners did not give any consideration to the state-wide land use goals, but no challenge to the county's decision was carried forward. The 1977 permit ended by its terms in 1979, but petitioner did not reapply for a conditional use permit until 1980. At some time between 1977 and 1980, he erected another, similar building without obtaining either a building permit or a conditional use permit and on land not encompassed in the 1977 permit.[1] The whole tract is zoned agricultural, grazing and timber raising (AGT). Lane County's comprehensive plan has not been acknowledged by the Land Conservation and Development Commission.

■    Respondent Clemens is a former business associate of petitioner. He owns AGT property more than two miles away from the subject property. He appeared orally and in writing before the Board of County Commissioners in opposition to the granting of the conditional use permit. He alleged before LUBA that he was not only entitled to receive but was actually mailed notice of the Board of County Commissioners' proceedings in this matter and that

---

[1] Petitioner's original 1980 application encompassed only the 1977 permit area, but the application was amended to cover both buildings and all of the land actually used and fenced off for the marine repair and storage use.

he was aggrieved by the granting of the permit, because it allowed Lemmon to operate a commercial and industrial business in the AGT zone, thus giving Lemmon an unfair economic advantage "by permitting operation of his business on cheaper, agricultural land rather than in a commercial or industrial zoning district."

Petitioner challenges Clemens' standing before LUBA. Oregon Laws 1979, chapter 772, section 4(3) provides:

"(3) Any person who has filed a notice of intent to appeal as provided in (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

"(a) Appeared before the city, county or special district governing body or state agency orally or in writing; and

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

Under Lane Code 10.320-55, only owners of property within 300 feet of the periphery of property which is the subject of a conditional use permit are entitled to notice of hearing on an application. Petitioner argues that, because respondent's property is beyond that distance from the subject property, and he was therefore not entitled to notice, he has no standing.

Section 55 of Lane Code 10.320 requires the hearings officer to "render a written decision [on an application for a conditional use permit] and transmit a copy of said decision by mail to the applicant and other parties of record who have requested the same within 10 days of the conclusion of the public hearing." Lane Code 10.320-60 provides in part: "(1) An Appeal may be made to the Board of Commissioners by any interested person * * *." Respondent appealed the decision, even though he does not live within 300 feet of the subject property. The county heard the appeal and thereby indicated its interpretation that the meaning of "interested person" in Lane Code 10.320-60 is not restricted only to one entitled to notice of the hearing before the hearings officer under Lane Code 10.320-55.

Therefore, under section 4(3)'s standing provisions, respondent has been determined by the county to be a "person entitled as of right to notice and hearing prior to the decision being reviewed."[2] LUBA so ruled in concluding that respondent had standing under Oregon Laws 1979, chapter 772, section 4(3), and we agree. *Benton County v. Friends of Benton County*, 56 Or App 567, 642 P2d 358, *rev allowed* 293 Or 146 (1982).[3]

The only other issue before us relates to Goal 3. The county's finding on that issue is set out in the margin.[4]

---

[2] The county was a party before LUBA and challenged respondent's standing. Petitioner joined in that challenge. The county is not a party to this judicial review.

[3] We are informed that since the Board of County Commissioners' decision in this case, Lane Code 10.320-55 has been amended to limit appeals to the Commissioners in such a way as to exclude persons in respondent's situation.

[4]

"*Goal 3, Agricultural Lands:* The subject property does not contain predominantly agricultural soil; therefore, Goal 3 does not apply.

"The land on which the CUP will exist contains fill from road construction with a thin layer of Class IIw and IVw topsoil over it. The Board heard testimony that the subject soil is not capable of supporting agricultural production. The remainder of the 15-acre parcel on which the subject property exists is used, and will remain, in farm use as grazing land.

"The appellant asserted that the proposed CUP violated Goal 3 because the soils were in classes II and IV. The Board 'finds that in addition to the above stated facts regarding the lack of productive capacity of the subject property, the property is precommitted to nonfarm use. In order to so find, existing parcel sizes and their ownership must be considered in relation to the land's actual use. Characteristics which must be considered are (a) adjacent uses, (b) public services, (c) parcel size and ownership patterns, (d) neighborhood and regional characteristics, and (e) natural boundaries. A finding of precommitment, in a setting such as the Conditional Use Permit at issue here, must be supported by detailed findings. See Land Conservation and Development Commission Information Paper on the Exceptions Process approved March 10, 1979, as amended May 3, 1980, Section II (15).

"(a) *Adjacent Uses:*

"To the north of the subject property are numerous, small, residential lots. Adjacent to the property on the west and east are commercial enterprises. The Board also notes that as this area is designated residential in the subarea plan, the committed character of the neighborhood can only increase in that direction.

"(b) *Public Services:*

"The Board finds sufficient public facilities exist to support the proposed CUP, and no new ones are necessary. The appellant stated that the oil from the applicant's operation will foul the soil on the property, and an industrial

LUBA found that the record does not contain substantial evidence to support the finding that Goal 3 does not apply. The county planning staff had analyzed the entire 15-acre parcel, and the soil classification form in the record shows only that the entire parcel contained class II and IV soils. There is no indication what portion of the property was in each soil classification. LUBA, therefore, treated the entire tract as being in those two classes. Testimony in the record shows that agricultural activity in the forms of grazing, hay raising and grass seed raising was taking place or had formerly taken place on the entire parcel. The areas in the one and one-half acre tract that had not been blacktopped by petitioner now support growths of grass and trees.

■    The county's finding appears to deal only with the soils classification of the portion used for the boat repair and storage business, which petitioner testified was composed of fill materials with but a thin overlay of class II and IV soils. In *Meyer v. Lord,* 37 Or App 59, 69, 586 P2d 367 (1978), *rev den* (1979), a zoning case, we held that in determining agricultural suitability, it is not sufficient merely to consider the particular parcels sought to be rezoned. Rather, the entire tract in one ownership has to be considered. In *Flury v. Land Use Board,* 50 Or App 263, 623

---

sewerage system is necessary to support the proposed used. [sic] The Board heard evidence from the applicant that his oil trap prevented contamination of the soil; the County inspectors have never cited the applicant for fouling the soil. The Board finds the applicant's system is adequate to prevent soil pollution.

"(c) *Parcel Size and Ownership Patterns:*

"Parcel size patterns are changing in the area, as it changes character from rural to urban. Immediately to the north of the subject property, lots are generally an acre or less in size, and the trend is likely to continue. See map attached as Exhibit B for a perspective on neighborhood lot sizes.

"(d) *Neighborhood and Regional Characteristics.*

"Again, the area has no definite character, except that the area is urbanizing. The Board notes, however, that the development of the area is halted for the present by the lack of sewers, and the soil, which does not permit septic systems to be installed.

"(e) *Natural Boundaries:*

"Natural boundaries are not a factor in this decision. The Board therefore finds the subject property is precommitted to nonfarm uses.

"Additionally, the subject property is already built on, it is the site of a shed and driveway."

P2d 671 (1981), involving a proposed subdivision, we held that only the affected land needed to be considered in determining the predominant soil classifications. *Meyer* was concerned with suitability of the land for agriculture; in *Flury* the controlling issue was determination of the predominant soil classification. In this case we are concerned, as in *Meyer,* with the *suitability* of the land.

■ ■   The soil classification of the business site only is not controlling for the purpose of avoiding the application of Goal 3, where the effect of the conditional use permit would be to approve the removal of a small piece of a larger tract from the agricultural use classification and putting it to a commercial or industrial use. The county did not conclude that the subject area is not capable of supporting agricultural production, although that may be an inference from its reference to the testimony that it heard. Aside from the facts that petitioner has devoted the land to non-agricultural uses and that the county in 1977 approved that action (at least with respect to the front 200 feet of the area) without considering Goal 3, there is no evidence in the record to indicate that the property is not necessary or usable in connection with agricultural practices on the rest of the tract. *Meyer v. Lord, supra.*

LCDC has devised a procedure known as "the built upon or committed test" for taking an exception to the state-wide goals. *LCDC Information Paper on the Exceptions Process,* approved March 10, 1979, as amended May 3, 1980, section II(15). In essence, the county in the finding quoted in footnote 4, determined that the property was committed to a non-agricultural use. Originally, of course, the first building on the site was constructed under a permit stating that it was for agricultural purposes. The second building was built without any permit whatsoever. Moreover, the 1977 conditional use permit with respect to the first building was issued without consideration of Goal 3. Even though the county did make findings in this proceeding on the various elements to be considered in the exception process, we agree with LUBA's conclusion that the county could not permit introduction and maintenance of a use that violates Goal 3 and then sustain the continuation and existence of that use by the fact of its existence. The exception procedure was not properly followed.

Affirmed.