Submitted on record and briefs December 31, 1987, affirmed on petition and cross-petition January 27, reconsideration denied March 25, petition for review denied April 18, 1988 (305 Or 576)

HEARNE,
*Petitioner - Cross-Respondent,*

*v.*

BAKER COUNTY,
*Respondent,*

*and*

DUNN,
*Respondent - Cross-Petitioner.*

(LUBA 87-030; CA A46466)

748 P2d 1016

Sam H. Ledridge, LaGrande, and Neil S. Kagan and Robert L. Liberty, Portland, filed the briefs for petitioner - cross-respondent.

No appearance for respondent Baker County.

Donald B. Dunn, Jr., Halfway, filed the brief *pro se* for respondent - cross-petitioner.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner and respondent Dunn (respondent) both seek review of LUBA's order affirming Baker County's approval of the partition of respondent's 20-acre tract, located in an exclusive farm use zone, into one 10-acre and two five-acre parcels and the county's allowance of conditional use permits for nonfarm dwellings on the two smaller parcels. The county's decision was made after LUBA had twice remanded previous approvals of the partition and the dwellings. *See Smith v. Baker County,* 14 Or LUBA 167 (1985); *Hearne v. Baker County,* 14 Or LUBA 743, *aff'd* 81 Or App 105, 724 P2d 351 (1986).

Because respondent's cross-petition raises the jurisdictional question of whether LUBA erred by denying his motion to dismiss the appeal, we turn to it first and reject it without discussion.[1]

Petitioner makes three assignments of error, only the first of which calls for extensive comment. He argues in that assignment that LUBA misapplied ORS 215.283(3)(d), which permits single-family dwellings not provided in conjunction with farm use to be erected in EFU zones only upon a finding, *inter alia,* that the proposed dwelling

> "[i]s situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract * * *."

LUBA's opinion states, in relevant part:

> "As we explained in our last remand in this case the county must find 'the parcel for a nonfarm dwelling is generally unsuitable for the production of farm crops and livestocks *and* that land suitable for production of farm crops and livestocks is preserved.' *Hearne, supra* at 746. In other words, the county is not required to show the entirety of parcels A, B and C are unsuitable for farm use. Our remand required the county to find that each parcel is generally unsuitable for the production of farm crops and livestock; and, to the extent the parcels do include land suitable for such purposes, find that land will be preserved. * * *

---

[1] Petitioner has moved to strike respondent's brief in this court. We deny the motion.

"\* \* \* \* \*

"[T]he county identified [on remand] the areas that are unsuitable for grazing and areas that are marginally suitable. The areas that are marginally suitable will be preserved since the proposed dwellings will not be allowed to locate on the irrigated portions of the parcels. We believe the county has illustrated that the portions of these three parcels that are not irrigated, in view of the small size of the combined parcel, very rocky soils and short growing season, are generally unsuitable for grazing, the only practical farm use." (Footnote omitted; emphasis in original.)

Petitioner contends that LUBA departed from the standard, which he understands to be dictated by LUBA's own and our cases, that a nonfarm dwelling can meet the general unsuitability criterion of ORS 215.283(3)(d) only if the *"majority* of the proposed parcel [is] generally unsuitable for the production of farm crops and livestock." (Emphasis petitioner's.) Petitioner maintains that, under LUBA's decision here,

"a county may satisfy ORS 215.283(3)(d) by finding, first, that the parcel is generally unsuitable for the production of farm crops and livestock, and second, that the land suitable for production of farm crops and livestock is preserved. \* \* \* The entirety of the parcel need not be unsuitable for farm use.

"\* \* \* \* \*

"Regardless how much land in the parcel may be suitable for the production of farm crops and livestock—in fact, even if such land comprises a majority of the land in the parcel—LUBA's standard would allow a non-farm dwelling to be approved if the dwelling itself will be located on land that is unsuitable."

Part of petitioner's disagreement with LUBA's analysis may be due to an ambiguity in LUBA's language. Its statement that the "county is not required to show the entirety of [the] parcels \* \* \* are unsuitable for farm use" is susceptible, on its face, to two understandings: first, that the entire parcel need not be *considered* in making the general unsuitability determination; and, second, that the whole parcel must be considered and found to be generally unsuitable for farm use, but that it can be *generally* unsuitable *even if* parts of it are suitable. The first alternative would be an incorrect interpretation of ORS 215.283(3)(d). However, reading its

opinion as a whole, we understand LUBA to have meant—and applied—the second of the alternatives.

Petitioner apparently does not agree that that alternative, any more than the first, is a proper application of ORS 215.283(3)(d). He asserts that, under existing precedent, a majority of the land in a parcel must be unsuitable in order for the parcel as a whole to be found generally unsuitable for agricultural use. Petitioner relies on our statement in *Miles v. Bd. of Comm. of Clackamas County,* 48 Or App 951, 618 P2d 986 (1980):

> "Here, the Board found only that over 35 percent of the subject property contains soil classes IV, VI and VII. There is nothing in the record that shows that the *predominant* soils are in classes *other* than I-IV. We conclude that this land is subject to classification for exclusive farm use. Before a county may permit nonfarm residential uses on land subject to exclusive farm use classification, the requirements of ORS 215.213(3), included by reference in Goal 3, must be met." 48 Or App at 955. (Emphasis in original.)

That statement does not articulate a generally applicable litmus test, which petitioner ascribes to it, that a parcel can be generally unsuitable for farm use only if over 50 percent of its territory is unsuitable. We made the quoted statement in response to the argument that ORS 215.213(3)[2] did not apply to the proposed dwellings, because, according to the proponents, "not all agricultural land is automatically zoned for exclusive farm use" and their property was "not subject to exclusive farm use restrictions." 48 Or App at 954. The issue to which the *Miles* statement related was whether the land was "agricultural" under Goal 3 and was therefore *subject* to the EFU statutes; our statement did not bear on how the general unsuitability criterion or any other particular of those statutes should be *applied* to the land.[3]

Petitioner's understanding of the *Miles* language may be attributable to our reference to the percentage of the land which consisted of various soil types and to our use of the word

---

[2] ORS 215.213(3) is identical, in material respects, to ORS 215.283(3).

[3] There was also an issue in *Miles* as to whether the land had been shown to be generally unsuitable for farm use under ORS 215.213(3)(d). However, the language on which petitioner relies was not part of our discussion of that issue, and the ORS 215.213(3)(d) issue in *Miles* was not similar to the issue that we discuss here.

"predominant." However, we used that word because Goal 3, which we were applying, uses it: the goal defines "agricultural land," *inter alia,* as "land of predominantly [specified types of] soils." We concluded in *Miles* that the land was "agricultural" because of what the record showed regarding the predominant soil types on it. Whether agricultural land is unsuitable for agricultural use under ORS 215.283(3)(d) is a different question from whether the land *is* "agricultural" under Goal 3's definition. *See 1000 Friends of Oregon v. LCDC (Linn Co.),* 85 Or App 18, 735 P2d 645, *modified* 86 Or App 26, 738 P2d 215, *rev den* 304 Or 93, 742 P2d 48 (1987). Unlike Goal 3, ORS 215.283(3)(d) does not use the word "predominant" or any other word signifying that a particular quantity of the land in question must be unsuitable for the statutory criterion to be met. *Miles* does not aid petitioner.

Neither does *Miller v. Linn Cty.,* 4 Or LUBA 350 (1982), which petitioner argues is also inconsistent with LUBA's decision here. LUBA concluded in *Miller* that the county misapplied ORS 215.213(3) by considering only the part of the parcel where an existing homesite and other fixtures were located in making its unsuitablility determination. In other words, the county in *Miller* simply concluded that the structures were on unsuitable land, because the fact that they were there made the part of the parcel on which they stood unavailable for agricultural use. The present situation is very different. Under LUBA's decisions here, the county was required to consider the general suitability of the parcels as a whole. Only then could it consider the suitability of the specific parts of the parcels where the dwellings were to be located, and the dwellings could not be placed on land which was suitable for agricultural use. There is no inconsistency between LUBA's decision in this case and its decision in *Miller.* Indeed, this decision seems to go one step farther than *Miller* did in the direction which petitioner favors: like *Miller,* it requires a determination that the parcel is generally unsuitable; it *also* mandates that any suitable land within the parcel be used for farm purposes rather than as the site for a nonfarm dwelling.

Although petitioner is not correct in his understanding that we have adopted such a test, there is some logic to his underlying view that few parcels can be generally unsuitable for farm use if more than half of their land is suitable. It may

be that petitioner's view is predictively accurate of how local government should resolve most of the suitability questions which come before them. However, we do not agree that that probability should be converted into a universally applicable test. ORS 215.283(3)(d) spells out several considerations which are relevant to the determination of whether land is generally unsuitable for farm use, *i.e.*, terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of tract. Those considerations, independently and in combination, are not conducive to an across-the-board "majority of the parcel" test. To illustrate, adverse land conditions on one acre of a five-acre parcel are likely to have a more profound effect on its overall suitability for farming than would identical conditions on one acre of a 50-acre parcel. Even comparing parcels of the same size, the general unsuitability calculus could be quite different if one acre on the periphery of the parcel contained rocky soils than if the same problem infected the same total quantity of land, but the rocky soil was interspersed throughout the parcel. Moreover, as this case demonstrates, it is not always possible to ascertain what percentage of the parcel is unsuitable under the combination of considerations which enter into the determination. Different parts of the parcels have different problems, all of which could have affected the county's ultimate view of the suitability of the various parts and the whole.

We conclude that LUBA's standard for applying ORS 215.283(3)(d) is correct under the facts of this case and that LUBA and the county correctly applied it to the facts. We therefore reject petitioner's first assignment. His second does not require discussion.

Petitioner's final assignment challenges LUBA's holding that he was precluded by the "law of the case" doctrine from raising certain issues which could have been but were not raised in the earlier appeals. We resolved that question adversely to petitioner's position in *Mill Creek Glen Protection Assoc. v. Umatilla Co.,* 88 Or App 522, 746 P2d 728 (1987).

Affirmed on petition and cross-petition.