Argued and submitted January 26, affirmed April 4, 1990

DENISON et al,
*Petitioners,*

*v.*

DOUGLAS COUNTY et al,
*Respondents,*

DOLE,
*Intervenor-Respondent.*

(LCDC 88-ACK-384; CA A50397)

789 P2d 1388

Gary Firestone, Portland, argued the cause for petitioners. With him on the brief were Jeffery W. Ring and Heller, Ehrman, White & McAuliffe, Portland.

No appearance for respondent Douglas County.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Inge Dortmund White, Roseburg, argued the cause for intervenor-respondent. With her on the brief was Dole, Coalwell & Clark, P.C., Roseburg.

Before Richardson, Presiding Judge, and Warren and Rossman, Judges.

## RICHARDSON, P. J.

Petitioners seek review of LCDC's acknowledgment order for Douglas County. They complain only about LCDC's approval of the commercial designation and zoning of and Goal 3 exception for a two and one-half acre retail market area that is part of the 10-acre Briggs farm site.

In *Sommer v. Douglas County,* 70 Or App 465, 689 P2d 1000 (1984), we reversed and remanded LCDC's previous acknowledgment order regarding the site and concluded that the county had failed to justify an "irrevocably committed" exception, ORS 197.732 (1)(b), for the 10-acre tract. We said that the county's findings and reasons failed to demonstrate that "it is 'impracticable' to use the Briggs site for agricultural uses." 70 Or App at 470. After our remand, the county zoned seven and one-half acres of the tract for exclusive farm use, but it attached a commercial designation to the two and one-half acre market area and took an exception to Goal 3 for its non-agricultural use. The exception was based on the "physical development" of the area. ORS 197.732(1)(a). LCDC acknowledged that treatment as complying with the goals.

Petitioners contend that the county's present exception is contrary to our decision in *Sommer v. Douglas County, supra,* concerning the earlier exception. ORS 197.732(1)(a) and (b) provide:

"(1) A local government may adopt an exception to a goal when:

"(a) The land subject to the exception is *physically developed* to the extent that it is *no longer available* for uses allowed by the applicable goal; [or]

"(b) The land subject to the exception is *irrevocably committed* as described by commission rule to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal *impracticable.*" (Emphasis supplied.)

As petitioners acknowledge, the first exception was based on irrevocable commitment, and our rejection of it in *Sommer* was based on the county's failure to show the "impracticability" of agricultural uses on the 10-acre site. The present exception is based on physical development of the market area, and the express standard of the statute for *that*

exception is the unavailability of the land for agricultural uses, rather than that they are impracticable. Nevertheless, petitioners argue:

"Although 'impracticability' is a term used in the 'irrevocably committed' exception, ORS 197.732(1)(b), OAR 660-04-025(2), the concept should apply to the 'physically developed' exception. The 'physically developed' exception requires that the site be no longer available for permitted uses. If permitted uses are practicable at a site, it necessarily follows that the site is still available for permitted uses." (Footnote omitted.)

Petitioners' argument posits that ORS 197.732(1)(a) necessarily incorporates the different standard that a different subsection of the statute articulates for a different kind of exception. LCDC explains in its brief that the reason the two subsections do not embody the same standards is that the kinds of exceptions under them bear little resemblance to one another:

"An exception based on irrevocable commitment considers 'existing adjacent uses and other relevant factors' [ORS 197.732(1)(b)] while an exception based on physical development considers existing development on the property, not the adjacent properties. ORS 197.732(1)(a).

"* * * * *

"Nothing in the statute, commission rules or the goals suggests exceptions criteria are shared as petitioners argue. OAR 660-04-028(6) lists the criteria applicable to an 'irrevocably committed' exception, and physical development of the site is listed as a relevant consideration. However, the criteria for a 'physically developed' exception [include] none of the criteria applicable to an 'irrevocably committed' exception. No intent to mingle the two distinct sets of criteria as petitioners suggest is evident in statute or commission rules." (Footnote omitted.)

See OAR 660-04-025.

Petitioners' reliance on *Sommer v. Douglas County, supra,* fails, because the premise for the exception that we rejected there was that the farm use of the 10-acre tract was impracticable. Here, the basis for the exception is that the two and one-half acre market area is physically developed in a way that makes it unavailable for farm use.

■     Petitioners argue, however, that it was improper for

the county to consider the market area in isolation and that it was required to consider the 10-acre tract as a "single unit for planning and zoning purposes." Petitioners rely on *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979). In that case, as well as in several others that petitioners do not cite, *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985), *Lemmon v. Clemens,* 57 Or App 583, 646 P2d 633, *rev den* 293 Or 634 (1982), and *Flury v. Land Use Board,* 50 Or App 263, 623 P2d 671 (1981), the questions were whether suitability for farm use, on the one hand, and predominant soil classifications, on the other, were to be determined by reference to an entire tract in common ownership or by reference only to the part of the tract for which a land use action was proposed.[1] The ultimate issue was whether Goal 3 was applicable to the proposed actions. Although we are not prepared to say that the holdings of those cases can never pertain to an exception to Goal 3, the cases are simply inapposite to the question of whether a particular part of a tract has been physically developed and is therefore unavailable for agricultural use. The only thing that *can* be considered in that context is whether the affected part itself has been developed to the point of unavailability, and the availability of other parts of the tract for farm use is irrelevant, at least where there is no question about whether *they are* to be devoted to agricultural use.

◼◼ Petitioners also argue that, even if the market area is not *now* conducive to farm use, it can and must be made available, *inter alia,* by changing the present truck parking and loading areas to such uses as parking farm vehicles and storing farm products and by changing the merchandise offered in the market so that it can qualify as a "[c]ommercial activit[y] that [is] in conjunction with farm use," rather than a nonfarm use. ORS 215.283(2)(a); *see Craven v. Jackson County,* 308 Or 281, 779 P2d 1011 (1989). Alternatively, petitioners contend:

"Even assuming that the market would not qualify as a

---

[1] Roughly speaking, the line of demarcation in the cases is that predominant soil types are to be ascertained only in the affected parcel itself, but suitability must be determined by considering the entire tract. Physical development is more analogous to soil types in its site-specificity, but that is not the best answer to petitioners' argument. As noted in the text, the issues are so unrelated that the cited cases have no meaningful relevance to this one.

commercial use in conjunction with farm use, the site could still be zoned EFU. ORS 215.130(5) provides, in part: 'The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued.' The site could and should be zoned EFU, and the pre-existing non-conforming use of the site could continue. The present plan and zoning allows development different in type and extent from current use."

LCDC responds:

"This argument has no foundation in Goal 3 or commission rule implementing Goal 3.[5] A finding that land is not available for resource uses does not demand a showing that existing uses are impossible to change in order to accommodate the resource use. The issue is whether the *existing uses* preclude resource use. In this case, the county found uses established before adoption of statewide planning goals render the land not available for farm use.

"\* \* \* \* \*

"Petitioners then claim that the site is still available for farm use. Petitioners would have the owner plow up the truck parking area (or park farm machinery instead of trucks) and plant crops around the buildings. Again, no legal requirement exists to support petitioner's position.

---

"5

"Some statewide planning goals require not only preservation of a resource, but its restoration where appropriate. For example, Goal 16, the Estuarine Resources goal is

" 'To recognize and protect the unique environmental, economic, and social values of each estuary and associated wetlands; and

" 'To protect, maintain, where appropriate develop, and where appropriate restore the long-term environmental, economic, and social values, diversity and benefits of Oregon's estuaries.'

"The restoration requirement is also found in Goals 17 (Coastal Shorelands), and 18 (Beaches and Dunes)." (Emphasis in original.)

We agree with LCDC. We also agree with LCDC that ORS 215.130(5), relating to rights in nonconforming uses, has nothing to do with the issues in this case.

Petitioners' remaining assignments and arguments do not require discussion.[2]

Affirmed.

---

[2] Indeed, it is somewhat questionable whether we should write any opinion to affirm an acknowledgment order at this point in history. The exercise is akin to writing a veterinary textbook on the treatment of dinosaurs.