Argued and submitted July 20, affirmed September 12, reconsideration denied
November 14, petition for review allowed December 4, 1990 (310 Or 791)
See later issue Oregon Reports

Mark R. SMITH,
*Petitioner,*

*v.*

CLACKAMAS COUNTY
and Jim Bisenius,
*Respondents.*

(LUBA 89-156; CA A65307)

797 P2d 1058

Lawrence R. Derr, Portland, argued the cause and filed the brief for petitioner.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause for respondent Clackamas County. With him on the brief was Clackamas County Counsel, Oregon City.

Stephen J. Williams, Salem, argued the cause and filed the brief for respondent Jim Bisenius.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner owns and conducts farming operations on a 54-acre parcel in an exclusive farm use zone. LUBA affirmed Clackamas County's denial of his application to build a non-farm dwelling on a seven-acre part of that parcel.[1] He seeks review and we affirm. The county made its decision under a provision of its zoning ordinance that parallels ORS 215.283(3)(d)[2] and denied the application on the basis of its conclusion that the proposed dwelling would not be situated on land that is generally unsuitable for the production of farm crops and livestock. The seven acres on which petitioner seeks to locate the dwelling are unsuitable for farm use, but the remaining 47 acres are suitable. The question is whether the suitability determination under ORS 215.283(3)(d) may be based only on the seven acres or whether the suitability of the parcel as a whole is the proper consideration. LUBA reached the latter conclusion and explained, *inter alia:*

"[W]e seriously question whether the legislature intended the generally unsuitable standard to be applied in a manner that potentially would allow large parcels that are suitable for farm use, but happen to include smaller areas that may be generally unsuitable for farming purposes, to be developed with non-farm dwellings. * * * [S]uch an interpretation is at odds with

---

[1] The county also denied petitioner's application to divide the seven acres from the rest of the parcel. That denial is not presented as a separate issue by the parties' arguments here.

[2] ORS 215.283(3) provides:

"Subject to ORS 215.288, single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to approval of the governing body or its designate in any area zoned for exclusive farm use upon a finding that each such proposed dwelling:

"(a) Is compatible with farm uses described in ORS 215.203(2) and is consistent with the intent and purposes set forth in ORS 215.243;

"(b) Does not interfere seriously with accepted farming practices, as defined in ORS 215.203(2)(c), on adjacent lands devoted to farm use;

"(c) Does not materially alter the stability of the overall land use pattern of the area;

"(d) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and

"(e) Complies with such other conditions as the governing body or its designate considers necessary."

In the main, LUBA's decision and the parties arguments discuss the statute rather than the ordinance.

the legislative policy expressed in ORS 215.243(2) to preserve existing large parcels of agricultural land in large blocks."

We have never decided the precise issue that this case presents, but we have considered related issues. In *Lemmon v. Clemens,* 57 Or App 583, 646 P2d 633, *rev den* 293 Or 634 (1982), and *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979), we concluded that the determination of agricultural suitability under Goal 3 must be based on an entire tract in common ownership, rather than on the particular part of the tract for which a non-agricultural use is proposed. *See also 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985); *Denison v. Douglas County,* 101 Or App 131, 789 P2d 1388 (1990).

In *Hearne v. Baker County,* 89 Or App 282, 748 P2d 1016, *rev den* 305 Or 576 (1988), the issue was whether "general unsuitability" under ORS 215.283(3)(d) requires a determination that a majority of the area in a parcel is unsuitable. However, we made a statement that has apparent bearing on the different issue here:

"Under LUBA's decisions here, the county was required to consider the general suitability of the parcels as a whole. Only then could it consider the suitability of the specific parts of the parcels where the dwellings were to be located, and the dwellings could not be placed on land which was suitable for agricultural use." 89 Or App at 287.

The county regards that statement as decisive in favor of LUBA's and its interpretation of the statute. We do not. It was a description of LUBA's holding in that case, not a statement of our own conclusion. Moreover, to say that the suitability of the entire tract must be *considered* is not the same as saying that the determination must be *based* on the entire tract rather than on the part on which the nonfarm use is to be located. *See Endresen v. Marion County,* 15 Or LUBA 60, 63 (1986).[3]

---

[3] LUBA said in *Endresen:*

"We agree that the county must consider suitability of the whole parcel for farm use under this criterion. *See Lemmon v. Clemens,* 57 Or App 583, 646 P2d 633 (1982); *Flurry v. Land Use Board of Appeals,* 50 Or App 263, 623 P2d 671 (1981); *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* (1979). This review is only a threshold inquiry, however. If it can be shown that a portion of the property is not suitable for farm use 'considering terrain, adverse soil or land conditions, drainage and flooding, [and] location and size of the parcel,' then the county may consider this criterion as satisfied even though the *majority* of parcel is suitable for farm use." 15 Or LUBA at 63. (Brackets and emphasis in original.)

In the present case, LUBA overruled *Endresen.*

■      Petitioner makes three arguments that call for further discussion in support of his contention that LUBA's interpretation of the statute is wrong. First, he contends, the legislative history of the statute requires the opposite interpretation. He points to the statement of Senator MacPherson, who played a major role in the adoption of Senate Bill 101 in 1973:

> "And I think that this is the kind of thing that gets farmers up tight. If their son wants to live out there and we have some land, perhaps the land has been cut off by a road. Maybe there's an acre there. Maybe there's a rocky knoll. This kind of thing. And I think we've got to have a little escape valve here whereby we can allow a small amount of single family residential dwelling within an exclusive farm use zone."

MacPherson's statement lends some support to petitioner's view, but not much. As the county notes in its brief, the statement is "only a single piece of testimony from one legislator (albeit an important player in the land use arena at the time)." Moreover, the statement does not directly support petitioner's interpretation of the statute. Although what MacPherson said is consistent with the general statutory policy of allowing nonfarm dwellings on unsuitable land, he did not purport to describe how unsuitability should be determined. The legislature has met several times since we decided *Meyer v. Lord, supra,* and *Lemmon v. Clemens, supra.* Although those cases relate to Goal 3, there is enough overlap between the suitability issues under the goal and under the statute to make the legislative inaction in the light of those cases somewhat probative. The legislative history is not dispositive, one way or the other.

Petitioner's second argument is that LUBA's interpretation is contrary to the statutory language. The criterion is that the dwelling be "situated upon generally unsuitable *land* * * *, considering," *inter alia,* "size of the *tract.*" (Emphasis supplied.) Petitioner maintains that the emphasized words are part of one provision and presumptively do not mean the same thing; hence, "land" must refer to the specific site of the dwelling, while "tract" refers to the entire property within which the "land" is located.

■      The word "land," in the context of the statute, is not a locational term, but refers to the generic thing on which

houses stand. "Tract" describes a quantum of land or a type of unified ownership. The two words do not mean the same thing, but neither do they mean what petitioner asserts. If they did, the statute would be nonsensical. If the suitability inquiry were limited to the site of the proposed dwelling, it would be pointless for a county to have to consider the size of the tract in which that site is located. Although the size of a tract may have *some* bearing on *its* suitability for agriculture, that will seldom be relevant to whether a particular part of the tract is independently unsuitable. *Compare Clark v. Jackson County,* 103 Or App 377, 797 P2d 1061 (1990); *Denison v. Douglas County, supra.*

Petitioner's remaining argument challenges LUBA's conclusion that the general unsuitability test of ORS 215.283(3)(d) should be fashioned to accord with the preservation objective of ORS 215.243. Petitioner explains that ORS 215.283(3)(a) requires a finding of consistency "with the intent and purposes set forth in ORS 215.243"; hence, if that intent and purpose is also determinative of how the general unsuitability standard of subsection (d) is to be applied, one or both of the subsections become redundant or meaningless. We disagree. The fact that the proposal must satisfy both criteria does not mean that the two criteria must serve totally independent purposes. The agricultural lands statutes were meant to be interrelated in their objectives and applications. *See McCaw Communications, Inc. v. Marion County,* 96 Or App 552, 773 P2d 779 (1989). We agree with LUBA that the ORS 215.243 policy of preserving "large blocks" of agricultural land is possibly the *strongest single reason* for requiring general unsuitability to be measured against an entire commonly-owned tract rather than only the part of it on which the proposed dwelling would be located. Petitioner's reading of ORS 215.283(3)(d) would promote the kind of balkanization that ORS 215.243 precludes.

We recognize that, if the entire tract must be generally unsuitable for any part of it to qualify as the location of a nonfarm dwelling, the sites that can qualify in EFU zones will probably be few and far between. However, ORS 215.283(3) was not intended to facilitate nonfarm dwellings on agricultural land. It creates "rigorous criteria" for allowing them. *Hopper v. Clackamas County,* 87 Or App 167, 171, 741 P2d 921 (1987), *rev den* 304 Or 680 (1988). We agree with LUBA that a

nonfarm dwelling is not permissible on any part of a tract that is generally suitable for farm use.[4]

Affirmed.

---

[4] We do not decide here whether all areas that are in common ownership and contiguous *invariably* constitute a "tract" for purposes of the statute. Under these facts, however, the area in question is a single tract as a matter of law.