Argued and submitted May 15, affirmed July 1, petitioner's petition for
reconsideration allowed by opinion September 9, 1992
See 115 Or App 145 (1992)

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Respondent,*

*v.*

# COOS COUNTY,
*Respondent,*

*and*

# LONE ROCK TIMBER COMPANY,
*Petitioner.*

(LUBA 91-193; A74190)

833 P2d 1318

David B. Smith, Tigard, argued the cause and filed the brief for petitioner.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Department of Land Conservation and Development. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondent Coos County.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

On December 20, 1990, petitioner applied to Coos County for a conditional use permit and a land division to build a nonforest dwelling on a five-acre part of its 110-acre parcel in a forest zone. The county planning director denied the application, as did the planning commission. Petitioner appealed to the county governing body, which reversed the commission's decision and approved the application. Respondent Department of Land Conservation and Development[1] appealed to LUBA, which remanded the county's decision. Petitioner seeks review, and we affirm.

The county zoning ordinance provides that, for a nonforest dwelling to be approved in a forestry zone, the "proposed site" must be situated on "land generally unsuitable for forest uses." The five acres on which petitioner seeks to build the dwelling are unsuitable for forest use; the remainder of the 110-acre parcel is not unsuitable. The issue is whether the "generally unsuitable for forest uses" standard requires a determination only of the suitability of the proposed immediate dwelling location or whether the determination must be based on the suitability of the entire parcel.

In *Smith v. Clackamas County*, 103 Or App 370, 797 P2d 1058, *rev allowed* 310 Or 791 (1990), we addressed the analogous question in connection with nonfarm dwellings in agricultural zones and concluded that the "general unsuitability" criterion of ORS 215.283(3)(d) requires that the entire parcel be generally unsuitable for farm use in order for a nonfarm dwelling to be permitted on any part of it. The Supreme Court allowed review of our decision in *Smith* on December 4, 1990, 16 days before petitioner filed its application with the county in the present case. As of the date of this opinion, the Supreme Court has issued no decision in *Smith*. *See also Clark v. Jackson County*, 103 Or App 377, 797 P2d 1061, *rev allowed* 310 Or 791 (1990); ORS 197.805. For reasons similar to those expressed in *Blatt v. City of Portland*, 109 Or App 259, 263 and n 3, 819 P2d 309 (1991), we conclude that neither the expeditious decision requirements of the land use statutes nor the interests of justice would be served

---

[1] The county has also been named a respondent. It has not appeared, and we use "respondent" to refer to the department only.

by our delaying the decision of this case until the Supreme Court disposes of *Smith*.

Petitioner contends that the reasoning and conclusion in *Smith v. Clackamas County, supra*, should not be extended from the farm to the forestry context. It argues that the central basis for our decision in *Smith* is the express policy of the agricultural lands statutes that large blocks of commercial farm land be preserved. *See* ORS 215.243. According to petitioner, state law states no corresponding requirement for forest land. Although petitioner is technically correct, the overriding objective of the state regulation of agricultural and forest land, as expressed in Goals 3 and 4, is the same: to preserve or retain the lands for resource use. *See Grden v. Umatilla County*, 10 Or LUBA 37, 43 (1984).

Unlike in the case of nonfarm dwellings in EFU zones, nothing in state statutes *requires* local governments to apply a general unsuitability test in deciding whether to permit a nonforest dwelling in a forestry zone. However, given the county's choice to establish that test in its ordinance, LUBA and we must ascertain what it means. LUBA reasoned, *inter alia*:

> "[I]t is correct to characterize the term 'generally unsuitable' as a term of art, at least when it is used in the context of nonresource use approvals in resource zones. We also agree with [respondent] that because [the ordinance] uses language substantially duplicating the statutory 'generally unsuitable' standard, it is correct to apply the legal interpretation applicable to the 'generally unsuitable' standard developed in the context of nonfarm use approvals in exclusive farm use zones."

It also noted that, in two previous opinions, it had extrapolated from the reasoning in *Smith v. Clackamas County, supra*, and other cases pertaining to nonagricultural uses in EFU zones and had applied it to the "generally unsuitable" or similar criteria that were applicable to the nonforest uses considered in those opinions. *See Samoilov v. Clackamas County*, ___ Or LUBA ___ (LUBA No. 91-131, December 12, 1991); *Sabin v. Clackamas County*, 20 Or LUBA 23 (1990).

Although the interpretation that we have given the term in one context may be instructive in construing it and in determining what its authors were likely to have intended by

it in another, we do not conclude that "generally unsuitable" is a term that necessarily has the same meaning wherever it is used. *See Clark v. Jackson County, supra,* 103 Or App at 380, n 2. The more persuasive reason for deciding that the same meaning was intended and for applying the same meaning to the ordinance provision here as we did to the statute in *Smith v. Clackamas County, supra,* is that the policies underlying the words in the two settings are identical. Parcelization is as inconsistent with the preservation and proper use of forest land as it is with commercial agriculture. LUBA said in *Grden v. Umatilla County, supra,* and we agree:

> "Acceptance of the narrow reading proposed by the [applicant], while attractive in the present case, could easily result in the gradual diminution of valuable resource lands. Myriad nonforest uses could be expected to spring up on small, unproductive building sites located on larger parcels containing valuable timber land. In time, these uses could well make a much larger presence known, to the detriment of the values reflected in Goal 4." 10 Or LUBA at 43.

Petitioner argued to LUBA that, at the time the county enacted its ordinance, our interpretation of "generally unsuitable" as used in the agricultural lands statutes had not yet been fully articulated and that, therefore, there is no basis for inferring that the county had intended the meaning that we later gave the words when it wrote them into its ordinance. However, as we pointed out in *Smith v. Clackamas County, supra:*

> "We have never decided the precise issue that this case presents, but we have considered related issues. In *Lemmon v. Clemens,* 57 Or App 583, 646 P2d 633, *rev den* 293 Or 634 (1982), and *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979), we concluded that the determination of agricultural suitability under Goal 3 must be based on an entire tract in common ownership, rather than on the particular part of the tract for which a non-agricultural use is proposed. *See also 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985); *Denison v. Douglas County,* 101 Or App 131, 789 P2d 1388 (1990)." 103 Or App at 373.

The relevant county legislation was enacted in 1984. Some of the cases that we cited in *Smith* predate that enactment. *See also Allen v. Umatilla County,* 8 Or LUBA 89 (1983).

Petitioner also asserts that the Forest Practices Act, ORS 527.610 *et seq*, contains no "large block" or "general unsuitability" requirement. Because the legislature has met and has amended that statute as recently as 1991, without incorporating the standards or our interpretation of them, petitioner argues that it implicitly intended that they not apply to forest land. Petitioner relies on our statement in *Smith v. Clackamas County, supra*:

> "The legislature has met several times since we decided *Meyer v. Lord, supra*, and *Lemmon v. Clemens, supra*. Although those cases relate to Goal 3, there is enough overlap between the suitability issues under the goal and under the statute to make the legislative inaction in the light of those cases somewhat probative. The legislative history is not dispositive, one way or the other." 103 Or App at 374.

Petitioner misapprehends the length to which the "legislative inaction" principle of construction can be carried. Usually, it refers only to the legislature's inaction with respect to a specific statute that the court has expressly interpreted. *See, e.g., State v. White*, 303 Or 333, 736 P2d 552 (1987). In *Smith v. Clackamas County, supra*, we applied the principle, as "somewhat probative" in connection with an interrelated statutory and regulatory scheme. It cannot be applied, however, just because the legislature has not responded in a statute dealing with *forest practices* to the court's interpretation of another statute relating to *agricultural land use*. The "legislative inaction" principle is a tenuous one to begin with, and petitioner's application of it stretches it to a point past which it can provide any insight into legislative intent.

Affirmed.