Argued and submitted March 13, reversed and remanded with instructions to dismiss the writ of review December 4, 1991

# KNIGHT SECURITY OF OREGON, INC.,
## *Respondent,*

*v.*

## James SPICKERMAN
## and City of Eugene,
## *Appellants.*

## (16-90-00203; CA A64750)

821 P2d 1101

Jens Schmidt, Eugene, argued the cause for appellants. With him on the brief were Glenn Klein, William F. Gary and Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene.

Anthony T. Rosta, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this writ of review proceeding, ORS 34.010 to 34.100, defendants City of Eugene (city) and Spickerman, a city hearings officer, appeal an order of the circuit court reversing their decision to revoke plaintiff's business license and to deny its application to renew the license. We reverse.

In November, 1988, city issued plaintiff a one-year renewable license to operate a security agency inside city limits. On October 18, 1989, city issued a notice of its intention to revoke plaintiff's license, on the basis of three alleged violations of the city code: (1) it employed uncertified security officers; (2) it employed uncertified *armed* security officers; and (3) it failed to notify city of a change in its business address. Plaintiff requested a hearing, and the revocation was stayed pending the outcome of the hearing.

Plaintiff's license was due to expire on November 4, 1989, and so, while the revocation matter was still pending, it applied for a renewal of the license on November 3, 1989. City denied the application for a renewal because, in addition to similar violations of the city code, it asserted that plaintiff had violated state wage and hour regulations. Plaintiff appealed city's decision and, in December, 1989, the hearings officer conducted a consolidated hearing on the revocation and the refusal to renew.[1] He found that plaintiff had committed serious and intentional violations of state law and the city code, that city had not abused its discretion in revoking the license and that its refusal to renew was appropriate. He also rejected plaintiff's argument that city was required to follow its abatement procedure before revoking or denying plaintiff's license, Eugene Code (EC) § 3.045, concluding that the use of the procedure was within city's discretion.

Plaintiff petitioned the circuit court for a writ of review. Although the court accepted the hearings officer's

---

[1] As city correctly points out, although the license expired before the revocation hearing, plaintiff's appeal of city's decision to revoke the license is not moot. Eugene Code (EC) § 3.050(4) provides that a person whose license has been revoked is not eligible to apply for a new license for a period of 90 days. In addition, EC § 3.050(5) provides that a person whose application for a license has been denied or whose license has been revoked two times within one year shall be disqualified from applying for a new license for a period of two years. Consequently, the outcome of the revocation issue would determine plaintiff's eligibility for a new license.

findings that the violations had occurred, it concluded that the city code and due process *required* city to use the abatement procedure before revoking or denying the license. Second, it concluded that city should have, but had not, considered the economic impact of revocation and denial on plaintiff before taking those actions. Accordingly, the court reversed city's decision.[2]

Defendants' first argument is that the circuit court erred, because, under the city code, the use of the abatement procedure is entirely within city's discretion. The abatement procedure is described in EC § 3.045:

"(1)   Upon finding that a violation of this code, or applicable city, county, state or federal laws has occurred, the city *may* provide written notice to the licensee of the violation and demand that the violation be corrected within a reasonable time as specified in the notice. The notice shall describe with reasonable certainty the violation and the action necessary to correct the violation.

"(2)   *In the event of* a notice under subsection (1) of this section:

"(a)   The licensee shall notify the city when corrective action has been taken, and the city may then cause an inspection to be made to determine compliance.

"(b)   If the licensee fails to take corrective action within the time required, the city *may* take action under *section 3.050* of this code to revoke the license." (Emphasis supplied.)

---

[2] We note that the fact that plaintiff's license had expired before any action could be taken on its application to renew was because plaintiff did not follow the procedures that were meant to protect it. Plaintiff's business license was *not* automatically renewable; pursuant to EC § 3.030, an application for renewal must be made at least 60 days before expiration, so that the city may review the application and conduct a hearing after a decision to deny renewal. That procedure ensures that the license will not expire during the review period and that the licensee will not be prevented from continuing its business during the approved one-year term of the license.

Here, however, plaintiff waited until *one day* before its license was due to expire before applying for a renewal. If plaintiff had applied for a renewal 60 days before expiration, as it was required to do, the city would have been required to conduct the hearing within 15 days — long before the license was due to expire. EC § 3.060. Thus, it was plaintiff's failure to follow the application procedure that resulted in the expiration of its license.

The abatement procedure begins with a warning, allowing a violator a reasonable time to take corrective measures before revocation.

EC § 3.050 grants city the authority to revoke or deny a license:

"(1)   The city *may* deny or revoke a license upon finding that:

"(a)   The licensee fails to meet the requirements of this code, or is doing business in violation of this code or applicable federal, state or county law, ordinance, rule or regulation.

"(b)   The applicant has provided false or misleading material information, or has omitted disclosure of a material fact on the application, related materials, or license.

"(c)   The applicant's past or present violation of law or ordinance, including a violation that does not lead to a conviction, presents a reasonable doubt about his/her ability to perform the licensed activity without endangering property or the public health and safety.

"(d)   The information supplied for the review does not indicate that the applicant has the special knowledge or skill required to perform the licensed activity.

"(e)   The licensed activity or device would endanger property or the public health or safety.

"(2)   The city *shall* provide written notice to the applicant of a denial or revocation. The notice shall state the reason for denial or revocation and shall inform the applicant of the right to appeal under section 3.060 of this code.

"(3)   The notice *shall* be given at least 15 days before the revocation becomes effective. If the violation ends within the 15 days, the city *may* discontinue the revocation proceedings." (Emphasis supplied.)

Plaintiff does not dispute that the language of § 3.045 gives city discretion. It argues, however, that when EC §§ 3.045 and 3.050 are read together, the only discretion available is *whether to revoke* a license. According to plaintiff, if city decides to revoke a license under § 3.050, it must follow the abatement procedure in § 3.045.

■   EC § 3.045(2)(b) would appear to support that contention, providing that "[i]f the licensee fails to take corrective action within the time required, the city *may* take action

under section 3.050 of this code to revoke the license."
(Emphasis supplied.) It is clear, however, from reading the
ordinances together, that that is not what is intended. If,
after discovery of a supposed violation, city decides to take
action, it has two options. It may revoke or deny a license,
following the notice requirements of EC § 3.050(2) and (3), as
it did here. Alternatively, it may follow the abatement pro-
cedure, in which case it must give the licensee a written notice
of a revocation and demand that the violation be corrected
within a reasonable time. There is no indication that abate-
ment is intended to be a prerequisite to revocation, unless city
begins the abatement process, in which case it must follow
through with it. Then, only after the expiration of the notice
period of the abatement process, may city take an action
under EC § 3.050 to revoke a license. If city never begins the
abatement process, however, it may revoke a license under
the independent authority of EC § 3.050. In addition, and
contrary to the court's finding, the abatement options
described in §§ 3.045 and 3.050(3) apply only to revocations of
existing licenses, not to denials of new or renewed licenses.
Because city had not initiated the abatement process, the
circuit court erred in holding that city was required to com-
plete that procedure before taking action either to revoke or
to deny plaintiff's license.

Turning to plaintiff's second argument, the circuit
court also held that, "given the extent of the loss threatened,
principles of Due Process required" that city use the abate-
ment procedures and that the hearings officer "abused his
discretion in his review of the City's action by failing to
consider the economic impact of that action" on plaintiff.
Both of those holdings appear to accept plaintiff's argument
that the business license was a property interest of which it
could not be deprived without procedural due process and
that, in this case, "due process" could only have been satisfied
through the abatement procedure of § 3.045.

Without deciding whether the business license was,
in fact, a property interest, we conclude that plaintiff was
afforded all the process that was due. It received written
notice of the bases for the revocation and denial and an
opportunity to be heard on both issues at a hearing before the
revocation becomes effective. *See, e.g., Goldberg v. Kelly*, 397

US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970). Principles of due process do not require city to follow an abatement procedure that is entirely within its discretion to use or not.

■       Finally, plaintiff suggests that city chose to proceed with the revocation and denial without using the abatement procedure because of "bad blood" between the parties arising from a previous lawsuit. Plaintiff's only evidence is a statement made by the city attorney at trial:

> "I think it's undisputed that in the past the City has written to [plaintiff], has communicated to them [sic] about the practices that they were engaged in.
>
> "Upon that procedure, in one instance the City and some of its employees found itself sued by [plaintiff] in Circuit Court for accusations it made in an abatement-proceeding type letter. Rather than go through that grief, [the city] simply institute[d] another remedy the City has available to them [sic] to deal with violations of the code or people doing business in violation of the code and that is serving them notice of the revocation and a short time later denial of their new license."

The statement shows only that city, having learned of violations of state law and the city code, exercised its right to revoke plaintiff's license and to deny its request for renewal. There is no indication of arbitrariness or inconsistent application in the revocation or the denial. *See generally Clark v. Schumacher*, 103 Or App 1, 6, 795 P2d 1093 (1990). City did not abuse its discretion and, accordingly, the circuit court erred in reversing the decision of city.

Reversed and remanded with instructions to dismiss the writ of review.