Argued and submitted September 9, 1994, affirmed May 24, 1995

PRE-HOSPITAL MEDICAL SERVICES, INC.,
an Oregon corporation,
*Appellant,*

*v.*

MALHEUR COUNTY,
an Oregon political subdivision
acting by and through the
MALHEUR COUNTY COURT;
Robert Harrod, John Bishop
and Maxwell Lieurance, individuals
and Malheur County Commissioners;
and Michael Cannon, an individual and
Malheur County Emergency Program Manager,
*Respondents.*

(91-08-24345-L; CA A80302 (Control))

PRE-HOSPITAL MEDICAL SERVICES, INC.,
an Oregon corporation,
*Appellant,*

*v.*

MALHEUR COUNTY,
an Oregon political subdivision;
Robert Harrod, an individual and
Malheur County Commissioner;
John Bishop, an individual and
Malheur County Commissioner; and
Maxwell Lieurance, an individual
and Malheur County Commissioner,
*Respondents.*

(92-06-24973-L; CA A80913)

896 P2d 585

482

Richard A. Lazar argued the cause for appellant. With him on the briefs were Carl F. Dyess and Law Offices of Richard A. Lazar.

James P. Martin argued the cause for respondents. With him on the brief were Janet M. Schroer and Hoffman, Hart & Wagner.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

De MUNIZ, J.

* Riggs, P. J., *vice* Rossman, P. J., retired.

## De MUNIZ, J.

Plaintiff appeals from an order denying its petition for writ of review and two separate summary judgments entered in favor of defendants. The parties agreed to consolidate the cases on appeal. We affirm.

Malheur County (County) enacted an ambulance service ordinance in 1988, pursuant to ORS chapter 823. Malheur County Ambulance Service Ordinance (Ordinance), ch 7, § 3-7-1: A. The Ordinance established the Malheur County Ambulance Service Advisory Board (Board), ambulance service areas (ASAs), and the methods for selecting ambulance providers for those areas. The County assigned the Ontario ASA to United Ambulance Service (United) for a three-year period from July 1, 1988, to July 30, 1991.

In February 1991, the County adopted the Malheur County Ambulance Service Area Plan (Plan) pursuant to ORS 823.180. The Board administers the Plan, which establishes boundaries of ASAs within the county, system standards, and procedures for coordinating ambulance service with other emergency services in the county.[1] In May 1991, plaintiff and United both submitted applications for the Ontario ASA assignment for the three-year period beginning in August 1991. Apparently, only one provider can serve the Ontario ASA. The Malheur County Emergency Program Manager (Manager) summarized the applications in a report to the Board. The Board rejected a motion to assign the Ontario ASA to plaintiff and recommended that the Malheur County Court assign it to United. The court held a hearing on the applications, determined that the proper procedure was for the Board to initially assign the Ontario ASA and returned the applications to the Board for it to do so.[2]

---

[1] The system standards include: notification and response times for each provider, levels of care, staffing and personnel training requirements, medical and vehicular equipment descriptions, and quality assurance.

[2] Ordinance, chapter 7, section 3-7-5-4, describes the procedures for assigning an ASA. It provides:

"A. Review of Application: Upon receipt of an application pursuant to Section 3-7-5-2 or 3-7-5-3 above, the Emergency Program Manager shall review the application for the applicant's conformity with the requirements of Oregon law for providing ambulance services, the specific criteria of the ASA Plan and the need for efficient and effective ambulance services within Malheur County.

"B. Emergency Program Manager Recommendation: Not later than thirty (30)

The Board held several hearings during the fall of 1991, made findings of fact, and ultimately decided, in January 1992, to assign the Ontario ASA to United. Plaintiff later appealed that decision to the Malheur County Court, as provided in the Ordinance.[3] After a hearing on the appeal and several meetings, the Malheur County Court affirmed the assignment of the Ontario ASA to United, and affirmed the assignment on plaintiff's petition for reconsideration.

This appeal involves three actions. Plaintiff filed one action for declaratory and injunctive relief and attorney fees, under 42 USC sections 1983 and 1988, after the Board rejected the motion to assign the Ontario ASA to plaintiff. It later filed a petition for writ of review of the Malheur County Court's assignment of the Ontario ASA to United. The court denied plaintiff's writ of review, granted defendants' motion for summary judgment on the civil rights claims and entered a judgment for defendants. The third action is a lawsuit filed by plaintiff alleging violations of Oregon public meetings

days after receipt of the application, the Emergency Program Manager shall make a report to the ASA Board, summarizing the information in the application, and making a recommendation as to the acceptance or denial of the application. The report shall contain any proposed changes to the ASA Plan necessitated by the action on the application.

"C. Public Hearing: Upon receipt of the Emergency Program Manager report, the ASA Board shall set the matter for public hearing, not sooner than thirty (30) days or later than sixty (60) days from receipt of the report.

"D. ASA Board Decision: In rendering a decision on the proposed application, the ASA Board shall consider the following criteria:

"1. How the proposed change will affect response time, quality and level of service in the affected area, including the impact on the existing first response system.

"2. The call volume in the affected area.

"3. The financial effect of the proposed change on the ability of authorized providers to provide service for the remaining areas of Malheur County.

"4. The effect of the proposed change on municipalities.

"E. Order of Acceptance or Denial: The ASA Board shall issue an order accepting or denying the approved application. The order shall delineate any changes in the ASA Plan to insure conformity with the order and the Plan."

[3] On March 11, 1992, the Malheur County Court amended the appeal provisions of the Ordinance. The amendments eliminated the Board from the appeal process. *See* Amendment to Ordinance, ch 7, § 3-7-8 A: 7 to § 3-7-8 C: 2 (1992); *see also* Ordinance, ch 7, § 3-7-8.

laws. The court also granted summary judgment and entered a judgment in favor of defendants in that action.

Our review of a summary judgment is to determine whether the moving party has met its burden to show that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978). We view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993).

Plaintiff makes nine assignments of error. In its first assignment, plaintiff argues that the court erred in concluding that defendants were entitled to qualified immunity on the claims under 42 USC sections 1983 and 1988. Plaintiff's other assignments concern the court's alleged errors in deciding that defendants did not violate plaintiff's statutory or constitutional rights and in denying plaintiff's petition for writ of review. We address plaintiff's arguments concerning violations of its statutory and constitutional rights first, because we need not decide whether defendants are entitled to qualified immunity if they did not violate plaintiff's civil rights.

■ In its second assignment, plaintiff argues that defendants violated its substantive due process rights by implementing the Ordinance and Plan in an arbitrary and capricious manner that was not rationally related to public health and safety purposes. We first address the question of whether the ASA assignment procedures create a property right, because the violation of that property right is the basis of plaintiff's substantive and procedural due process claims.[4] *See Board of Regents v. Roth*, 408 US 564, 570-73, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Bateson v. Geisse*, 857 F2d 1300, 1303 (9th Cir 1988).

Plaintiff presents five arguments why the ASA assignment procedures create a property right. Only three of those arguments merit discussion. Plaintiff argues that: (1) its "legally protected property interest derives from the

---

[4] In its fifth assignment, plaintiff argues that defendants violated its constitutional right to procedural due process.

very rules and laws surrounding [the ASA assignment] process"; (2) the ASA assignment constitutes a license or permit and that licensing applicants are entitled to due process protections; and (3) it acquired a property interest, because it had a " 'reasonable expectancy' " of receiving the ASA assignment.

■       Procedural requirements that operate as a "significant substantive restriction" on an agency's actions may create a constitutionally protected property interest. *Parks v. Watson*, 716 F2d 646 (9th Cir 1983); *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F3d 56 (9th Cir 1994). In *Parks*, the Klamath Valley Company sued the City of Klamath Falls when the city council denied its petition to vacate city streets in an area where it planned to develop an apartment complex and geothermal heating facilities. 716 F2d at 649-50. Klamath Valley Company alleged, *inter alia*, that the city violated its procedural due process rights by denying its vacation petition. In determining whether the Klamath Valley Company had a legitimate claim of entitlement to the street vacation and due process rights, the court examined the degree of discretion given to the city council in making a vacation decision. *Id.* at 657. It concluded that ORS 271.120 operates as a significant substantive restriction on an agency's actions, giving rise to due process rights, because the statute requires that a vacation petition be granted if two factual conditions and a third discretionary factor are met.[5] *Id.* Those conditions significantly limited the agency's discretion.

Here, three sections of the Ordinance affect the information that the Board considers when assigning an ASA. Ordinance, chapter 7, section 3-7-5-2: B, lists the information that must be included in an application for an initial

---

[5] ORS 271.120 provides, in part, that

"[the governing body] shall determine [1] whether the consent of the owners of the requisite area has been obtained, [2] whether notice has been duly given and [3] whether the public interest will be prejudiced by the vacation of such plat or street or parts thereof."

The court found that the first two factors are factual and involved no discretion. The public interest condition involved some discretion, but defined an "articulable standard." *Parks*, 716 F2d at 657.

ASA assignment.[6] Ordinance, chapter 7, section 3-7-5-3: D,
lists additional information that must be included in an
application for a reassignment of an ASA.[7] Those sections
guide the applicants. A third section, Ordinance, chapter 7,
section 3-7-5-4: D, lists the criteria the Board is to consider
when assessing the applications. We, therefore, focus on that
section in determining whether the procedures create a prop-
erty right.

---

[6] Ordinance, chapter 7, section 3-7-5-2: B, requires that an application include:

"a. The name and address of the person applying for the assignment of an
ambulance service area.

"b. The ambulance service area the person desires to service and the
location from which ambulance services will be provided.

"c. A list of vehicles to be used in providing ambulance services including
year, make and model and verification that each vehicle is certified as a basic life
support and/or advance life support vehicle by the State of Oregon.

"d. A current inventory of all equipment and supplies in each ambulance.
All equipment must conform to State standards.

"e. A list of personnel to be used in providing ambulance service, proof of
certification and training of personnel, and current emergency medical techni-
cian certificate number for all personnel.

"f. Proof of financial ability to operate, including an operating budget or
financial statement, references and proof of liability insurance, in the form of a
certificate of insurance or letter from the carrier. Private companies must
provide a profit and loss statement in addition to the above materials. Other
appropriate financial information, such as income tax returns, or reports by
governmental authorities shall also be submitted upon request.

"g. Proof of compliance with the terms and conditions of the ASA Plan and
applicable County ordinances in the form of a narrative summary.

"h. All affected providers and municipalities.

"i. Such additional information deemed necessary by the ASA Board or the
County Court."

[7] Ordinance, chapter 7, section 3-7-5-3: D, requires the inclusion of:

"1. A detailed summary of how the proposed change will improve ambulance
response time, quality and level of services to the affected area, without an
adverse impact on the existing first response system.

"2. Evidence that the call volume in the affected area is sufficient to financially
or otherwise justify the change in service.

"3. Evidence that the proposed change does not jeopardize the financial ability
of authorized providers to provide service to the remaining areas of Malheur
County.

"4. Information, in the form of run logs, medical records, physician advisor
correspondence, audit reports, training records, policy and procedure manuals
and equipment records and inventories, and any other records or materials
requested by the ASA Board.

"5. A summary of the effect of the proposed change on any affected munici-
palities."

Ordinance, chapter 7, section 3-7-5-4: D, provides:

"ASA Board Decision: In rendering a decision on the proposed application, the ASA Board shall consider the following criteria:

"1. How the proposed change will affect ambulance response time, quality and level of service in the affected area, including the impact on the existing first response system.

"2. The call volume in the affected area.

"3. The financial effect of the proposed change on the ability of authorized providers to provide service for the remaining areas of Malheur County.

"4. The effect of the proposed change on municipalities."

Nothing in that section requires the Board to award an assignment if an applicant meets certain criteria. The Board has complete discretion in awarding the assignment. The only mandatory aspect of the assignment section is that the Board consider the listed criteria. Because the Board's discretion is unlimited, there are no significant substantive restrictions in the assignment procedures that create a constitutionally protected property right.

■     Plaintiff argues that an ASA assignment constitutes a license, because no person is authorized to provide ambulance service without it. *See* ORS 183.310(4); *see also* Ordinance, ch 7, § 3-7-5-2: A.[8] It asserts that:

"[w]here an applicant for a license is likely to prevail if given a fair process, a legitimate claim of entitlement and due process protections exist."

*See Yale Auto Parts, Inc. v. Johnson*, 758 F2d 54 (2d Cir 1985). Plaintiff also argues that the Ordinance required the Manager to reject United's application, because United was not in compliance with personnel and equipment certification

---

[8] ORS 183.310(4) provides:

" 'License' includes the whole or part of any agency permit, certificate, approval, registration or similar form of permission required by law to pursue any commercial activity, trade, occupation or profession."

Ordinance, chapter 7, section 3-7-5-2: A, provides:

"Effective July 1, 1988, no person shall provide ambulance services in Malheur County unless an ambulance service area has been assigned to that person pursuant to this Section."

requirements. It further argues that it had a legitimate expectancy of prevailing, because it would have been the only qualified applicant if United's application had been rejected.

Assuming, without deciding, that an ASA assignment is a license, we are unpersuaded that an ASA applicant has a property right. The cases cited by plaintiff as authority for its argument do not directly address the question of whether a license applicant has a property right.[9] In addition, nothing in the Ordinance required the Manager to reject United's ASA application because United had violated provisions of the Ordinance. Section 3-7-12: A: 1 requires the Manager to demand correction of a violation of a law, ordinance, rule or regulation and provides the Manager with authority to suspend or revoke an ASA assignment. *See* Ordinance, ch 7, § 3-7-12: A: 1.[10] But, under section 3-7-12: B, revocation or suspension of an ASA assignment is a discretionary decision of the Manager. Ordinance, ch 7, § 3-7-12: B.[11] Even assuming there were grounds for revoking United's assignment, there is no guarantee that its application would have been rejected and that plaintiff would have been assigned the Ontario ASA. Consequently, plaintiff does not have a property right arising out of a legitimate claim of entitlement to the ASA assignment or an expectancy of prevailing in the ASA assignment process.

In summary, the ASA assignment procedures did not create a property right and thus, the court did not err in

---

[9] Plaintiff cites *Brennen v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979), *Schmidt v. Masters*, 7 Or App 421, 490 P2d 1029 (1971), and *Knight Security of Oregon v. Spickerman*, 110 Or App 83, 821 P2d 1101 (1991).

[10] Ordinance, chapter 7, section 3-7-12: A: 1, provides:

"The Emergency Program Manager shall, upon finding that a violation of this Chapter or applicable Federal, State, municipal or County laws, ordinances, rules or regulations has occurred, provide written notice to the provider of the violation and shall demand that the violation be corrected within not more than thirty (30) days from the date of the notice, subject to the Emergency Program Manager's power to immediately suspend or revoke a permit under subsection 3-7-8A2 of this Chapter. The notice shall describe with reasonable certainty the violation and the action necessary to correct the violation."

[11] Ordinance, chapter 7, section 3-7-12: B, provides:

"Revocation of License: The Emergency Program Manager *may* revoke or suspend the assignment of an ambulance service area assignment upon finding that the provider fails to meet the requirements of this Chapter, or is doing business in violation of this Chapter, or applicable Federal, State, municipal or County laws, ordinances, rules or regulations." (Emphasis supplied.)

concluding that there was no violation of plaintiff's substantive or procedural due process rights.

■     In its third and fourth assignments of error, plaintiff argues that the Ordinance is unconstitutionally vague and unconstitutionally delegates decision-making authority to the Board. It argues that the Ordinance is vague because:

"1.   The Ordinance and Plan fail to prospectively notify Ontario ASA applicants of specific, measurable selection criteria against which competing applications will be compared and a successful applicant selected.

"2.   Because the Ordinance and Plan nowhere define the term 'ambulance response time', different [Board] members interpreted this element in completely dissimilar ways.

"3.   Because the Ordinance and Plan nowhere define the term 'call volume', different [Board] members interpreted this element in completely dissimilar ways.

"4.   The Ordinance and Plan fail to prospectively articulate any general or precise methodology for selecting from among competing applicants. Thus, Plaintiff had no notice, in advance of applying for the Ontario ASA, about how decision-makers would compare competing applications against the vaguely described selection criteria.

"5.   The Ordinance fails to set forth any description of the scope and standard of review on administrative appeal. Conflicting information about the scope and standard of review was provided to Plaintiff throughout the process. Because of the absence of an articulated review standard, Plaintiff's administrative appeal was handled in an arbitrary and capricious manner." (Citations to record omitted.)

Plaintiff argues that the Ordinance unconstitutionally delegates authority to the Board to award or deny an ASA, because it does not contain guidelines or objective standards that limit the Board's authority.

■     In *Anderson v. Peden*, 284 Or 313, 587 P2d 59 (1978), the court distinguished between different types of legislative vagueness. Legislation that imposes a penalty or sanction for past conduct is unconstitutionally vague if it fails to provide notice of the conduct it prohibits and allows a prosecutor, jury or judge to decide what conduct is prohibited. *Id.* at 324. In contrast, legislation that authorizes administrative decision-making "is not unconstitutional merely because the terms of

the legislative directive are general and vague." *Id.* at 325. Vagueness challenges to such legislation involve "issue[s] of the constitutional allocation of powers, not of procedural fairness to particular persons." *Id.* To withstand a vagueness challenge in this context, the legislation must contain sufficient guidelines for the exercise of the administrative decision-making authority. In *Anderson*, the court concluded that the purposes section of a zoning ordinance summarized the general policy of the land use regulations sufficiently to guide the board of commissioners' exercise of their administrative discretion. *Id.*

Here, the legislature has directed counties to establish plans concerning the need for, coordination of and provision of efficient and effective ambulance services. *See* ORS 823.180. Those legislative directives are embodied in the policy and purposes section of the Ordinance. *See* Ordinance, ch 7, § 3-7-2: A.[12] The Ordinance requires the Manager to review ASA assignment applications

> "for the applicant's conformity with the requirements of Oregon law for providing ambulance services, the specific criteria of the ASA Plan and the need for efficient and effective ambulances within Malheur County." Ordinance, ch 7, § 3-7-5-4: A.

Those goals guide the Manager's review and report to the Board. The criteria focus the Board's review of the ASA assignment application and Manager's report on specific items. Because the Ordinance establishes a policy and procedures to promote that policy, it is not unconstitutionally vague or an unconstitutional delegation of decision-making authority. *See Anderson; see also Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980).

■　In its sixth assignment, plaintiff argues that the Ordinance and Plan violate the privileges and immunities clause, Article I, section 20, of the Oregon Constitution, by giving "an unlawful preference to [United] solely because it is

---

[12] Ordinance, chapter 7, section 3-7-2, provides:

"POLICY AND PURPOSE: The County Court finds:

"A. That ORS 823.180 requires Malheur County to develop a plan for the County relating to the need for and coordination of ambulance services and to establish ambulance service areas consistent with the plan to provide efficient and effective services."

the current assignee of the Ontario ASA."[13] It first asserts that ORS 823.310(3) prohibits granting a preference to an existing ASA assignee.[14] It further asserts that "[d]efendants admit that the Ordinance, on its face, grants existing ASA providers a preference over applicants for the same ASA," by requiring applicants for a reassignment to submit more information than an existing provider and to explain how the reassignment will improve ambulance service. *See* Ordinance, chapter 7, section 3-7-5-3: D, quoted at note 7. Therefore, plaintiff argues, ORS 823.310(3) "preempts" section 3-7-5-3 of the Ordinance. It also argues that, because the Ordinance grants an arbitrary preference, it violates Article I, section 20.

We disagree with plaintiff's argument concerning the effect of ORS 823.310(3). The plain language of the statute prevents a county from granting a preference "*solely* because [a] person or governmental unit is providing ambulance services at the time of adoption or review of the plan." *See* ORS 823.310(3) (emphasis supplied). That is, preference may be given to existing providers as long as the fact of being an existing provider is not the only basis for the preference. Here, the Manager testified that existing providers are given an advantage because they have established smooth working relationships with other medical service providers in the area and familiarity with the community. The information that applicants are required to submit, pursuant to Ordinance, chapter 7, section 3-7-5-3: D, concerns the potential effects on the existing system of a change in the ambulance provider. To the extent an existing provider is given a preference, it is because that provider is adequately serving the needs of its ASA. A preference based on competency does not violate ORS 823.310(3). Moreover, such a preference is rationally related

[13] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[14] ORS 823.310(3) provides:

"When determining the provider of ambulance services upon initial adoption or subsequent review of a plan under ORS 823.180, a county shall not grant preference under the plan to any person or governmental unit solely because that person or governmental unit is providing ambulance services at the time of adoption or review of the plan."

to providing efficient and effective ambulance service. Consequently, the Ordinance and Plan do not violate Article I, section 20, of the Oregon Constitution. *See City of Klamath Falls v. Winters*, 289 Or 757, 619 P2d 217 (1980).

In its seventh assignment, plaintiff argues that the court erred in determining that defendants did not violate state antitrust laws. It first asserts that defendants are not exempt from liability under the authorized activity exemption, ORS 646.740, because their activities were prohibited by state law. It further asserts that, because defendants must "implicitly concede" that their actions restrained trade and monopolized ambulance service within the Ontario ASA, defendants are liable as a matter of law under Oregon antitrust statutes.

Plaintiff's argument is unpersuasive. ORS 646.740 provides:

"No provisions of ORS 136.617, 646.705 to 646.805 and 646.990 shall be construed to make illegal:

"* * * * *

"(6)  Any other activity specifically authorized under state law or local ordinance[.]"

ORS 823.180 requires counties to develop and adopt ambulance service plans and regulations. Malheur County adopted the Ordinance pursuant to that statutory directive, and defendants acted pursuant to the Ordinance. The assigning of the Ontario ASA thus conforms to both state and local legislative directives. In addition, ORS 823.180(8) implicitly allows the assignment of a county's ambulance service to only one ambulance provider, because it allows the establishment of a single ambulance service area within a county.[15] The court did not err in concluding that defendants are immune from antitrust liability pursuant to ORS 646.740.

Because we conclude that defendants did not violate a statutory or constitutional right of plaintiff, we need not decide whether defendants are entitled to qualified immunity. *Cf. Mitchell v. Forsyth*, 472 US 511, 526, 105 S Ct 2806,

---

[15] ORS 823.180(8) provides:

"This section does not require a county to establish more than one ambulance service area within the county."

86 L Ed 2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

In its eighth assignment, plaintiff argues that the court erred in denying its petition for writ of review. *See* ORS 34.040(1)-(5).[16] It asserts that the court's findings are not supported by substantial evidence in the record.[17] It also argues that it may recover as restitution the lost compensation and expenses that it incurred as result of the court's erroneous denial of its petition for writ of review. *See* ORS 34.100; *Maddox v. Clac. Co. Sch. Dist. No. 25*, 293 Or 27, 643 P2d 1253 (1982).

We have reviewed the record and conclude that the court did not err in denying plaintiff's petition. *See Caffey v. Lane County*, 75 Or App 399, 706 P2d 590 (1985); *Miles v. Bd.*

---

[16] ORS 34.040 provides, in part:

"The writ shall be allowed in all cases where the inferior court including a district court, officer, or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(1) Exceeded its jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it;

"(3) Made a finding or order not supported by substantial evidence in the whole record;

"(4) Improperly construed the applicable law; or

"(5) Rendered a decision that is unconstitutional, to the injury of some substantial interest of the plaintiff, and not otherwise[.]"

[17] Plaintiff argues that it established that defendants:

"a. Adopted an unconstitutionally vague Ordinance and Plan;

"b. Unlawfully regulated and acted in areas preempted by state law;

"c. Violated Oregon public meetings law;

"d. Unlawfully amended the Ordinance and Plan;

"e. Unlawfully considered the application of [United];

"f. Granted an unlawful preference to [United];

"g. Knowingly allowed unlawful *ex parte* contacts;

"h. Knowingly violated numerous provisions of their own Ordinance and Plan;

"i. Made findings and orders unsupported by substantial evidence in the whole record;

"j. Improperly construed applicable law;

"k. Violated Plaintiff's due process rights; and

"l. Rendered unconstitutional decisions."

*of Comm. of Clackamas County*, 48 Or App 951, 618 P2d 986 (1980). Therefore, we need not address plaintiff's argument concerning the appropriate remedy for the denial of its petition.

■ Plaintiff's ninth assignment is that "the trial court erred in summarily determining that Defendants did not violate Oregon public meetings laws." Plaintiff argues that the court erred in concluding that claim preclusion barred plaintiff's public meetings action. It asserts that common law claim preclusion does not apply, because the court had not entered a final judgment in the writ of review proceeding when plaintiff filed its public meetings action and "[t]he remedies sought in Plaintiff's public meetings suit [were] statutorily prohibited from being joined in the companion proceedings."[18] It also asserts that it raised the public meetings law violations in the writ of review proceeding as evidence of defendants' illegal conduct, not as a ground for relief.

In the writ of review proceeding, plaintiff argued that "[d]efendants exceeded their jurisdiction by intentionally violating Oregon public meetings laws, specifically ORS 192.630(2)," a ground for allowing a writ of review. *See* ORS 34.040(1), quoted at note 16. Plaintiff argued that defendants' decision to affirm the ASA assignment was therefore void. *See* ORS 192.680(3). Plaintiff sought, *inter alia*, an order finding that defendants' orders were defective, annulling the ASA assignment and directing defendants to reassign the Ontario ASA in compliance with state and federal constitutional requirements. In its brief supporting its petition for writ of review, plaintiff requested restitution, including lost compensation, expenses and costs. The court found that there was no evidence indicating whether defendants provided plaintiff with notice of an April 20, 1992, meeting, pursuant to ORS 192.610 to ORS 192.690, and that, if notice

---

[18] Plaintiff also argues that statutory claim preclusion, under ORS 43.130, does not apply, because the court had not entered a final judgment in the writ of review proceeding when plaintiff filed its public meetings action and the judgment entered does not determine whether plaintiff willfully and intentionally violated ORS 192.680(3). We do not address plaintiff's argument concerning statutory claim preclusion, because the court based its decision on common law claim preclusion only.

was not given, defendants violated ORS 192.630(2).[19] However, the court concluded that any violation of ORS 192.610 to ORS 192.690 was "cured" when defendants voted to assign the ASA to United in a public meeting on April 21, 1992, and later affirmed that decision on plaintiff's petition for reconsideration.[20] *See* ORS 192.680(1). A judgment in favor of defendants was entered on June 11, 1993.

Plaintiff filed its public meetings action on June 18, 1992. Its first claim alleged that the April 20, 1992, meeting violated ORS 192.630(2) and constituted "willful misconduct and an intentional disregard of Oregon's public meetings laws." *See* ORS 192.680(3). Plaintiff's second claim alleged that defendants' conduct also constituted an abuse of public office under ORS 162.405(1) and ORS 162.415(1). Plaintiff sought declaratory and injunctive relief, attorney fees, costs and disbursements, and nominal and punitive damages. It also sought an order requiring that defendants comply with ORS 192.610 to ORS 192.690. On defendants' motion for summary judgment, the court first held that plaintiff was precluded from litigating the issue of whether defendants abused their public office, because that issue had been raised and decided in the prior civil rights action.[21] In addition, the court held that plaintiff was precluded from litigating the issue of whether defendants violated public meetings laws, because that issue had been raised and decided against plaintiff in the writ of review proceeding. It further concluded that, although the issue of whether defendants acted intentionally or committed willful misconduct was not squarely addressed in the writ of review proceeding, plaintiff could have and should have raised those issues in that proceeding.

---

[19] ORS 192.630(2) provides:

"No quorum of a governing body shall meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as otherwise provided by ORS 192.610 to ORS 192.690."

[20] We note that plaintiff does not challenge the court's holding in the writ of review proceeding that any violation of Oregon public meetings laws that may have occurred was "cured."

[21] In its civil rights action, plaintiff alleged a claim of abuse of public office, and the court held that there was not a private cause of action for money damages for an alleged abuse of public office. Plaintiff does not assign error to the holding that it is precluded from asserting a claim of abuse of public office and, therefore, we do not address that holding.

The Oregon Supreme Court has said, in explaining issue preclusion,

" 'if a claim is litigated to a final judgment, the decision on a particular issue or determinative fact is conclusive between the same parties if the determination was essential to the judgment.' " *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990) (quoting *North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *mod* 305 Or 468, 752 P2d 1210 (1988)).

*See also Restatement (Second) of Judgments* § 17(3) (1982). In contrast, common law claim preclusion applies

"where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such nature as could have been joined in the first action." *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982).

Here, the issue before the court in the writ of review proceeding and public meetings action was whether defendants violated ORS 192.630(2). Accordingly, the first question is whether issue preclusion bars plaintiff from asserting that defendants violated public meetings laws.

In *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993), the court stated:

"If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect." (Citations and footnote omitted.)

There can be no dispute here concerning the fourth and fifth requirements. Plaintiff, the party sought to be precluded, initiated and actively participated in both the writ of review

proceeding and the public meetings action. In addition, nothing about the characteristics of the writ of review proceeding lead to the conclusion that it is not the type of proceeding to which we should give preclusive effect. *See State v. Ratliff*, 304 Or 254, 744 P2d 247 (1987). Finally, with regard to the third requirement, plaintiff had a full and fair opportunity to be heard in each proceeding. Plaintiff's incentives for vigorously arguing that defendants acted unlawfully were the same, because defendants' alleged unlawful meeting was the basis for plaintiff's claim for relief in each proceeding.

The answer to whether issue preclusion bars plaintiff from asserting that defendants violated public meetings laws turns on the first two requirements. In the writ of review proceeding, plaintiff argued that defendants exceeded their jurisdiction by intentionally violating Oregon public meetings laws. Plaintiff argued that defendants' "decision upholding the [Board's] award of the Ontario ASA to [United was] therefore void." Similarly, plaintiff's first claim for relief in its public meetings action alleged that defendants' meeting on April 20, 1992, constituted willful misconduct and an intentional disregard of Oregon's public meetings laws. Thus, the first requirement for issue preclusion is satisfied: The issue of whether defendants intentionally or willfully violated public meetings laws was before the court in both proceedings.

ORS 192.680(1) provides:

"A decision made by a governing body of a public body in violation of ORS 192.610 to 192.690 *shall be voidable*. The decision shall not be voided if the governing body of the public body reinstates the decision while in compliance with ORS 192.610 to 192.690. A decision that is reinstated is effective from the date of its initial adoption." (Emphasis supplied.)

The plain language of that subsection indicates that some decisions that result from violations of public meetings laws may be remedied by reinstating the decision through a process that complies with public meetings laws. However, ORS 192.680(3) provides, in part:

"Notwithstanding subsection (1) of this section, if the court finds that the public body made a decision while in violation of ORS 192.610 to 192.690, *the court shall void the decision of the governing body if the court finds that the*

*violation was the result of intentional disregard of the law or willful misconduct* by a quorum of the members of the governing body, unless other equitable relief is available." (Emphasis supplied.)

Thus, decisions that result from intentional disregard of the law or willful misconduct generally are void and cannot be remedied.

As noted above, in the writ of review proceeding, the court concluded that any violation of public meetings laws was "cured" by defendants' public meeting and decision on April 21, 1992. ORS 192.680(3) prevented the court from reaching that conclusion if defendants intentionally disregarded the law or engaged in willful misconduct. Consequently, the legal effect of the court's conclusion that any violation was "cured" is that the defendants did not intentionally disregard the law or engage in willful misconduct. In short, the issue of whether defendants intentionally and willfully violated public meetings laws was raised, litigated and decided in the writ of review proceeding.

Plaintiff's argument concerning the absence of a final judgment when it filed its public meetings action applies to the second requirement. Plaintiff raised the issue of a violation of ORS 192.630(2) in the writ of review proceeding and presented evidence supporting its allegation of a violation, and the court made findings of fact and conclusions of law concerning the claim. Plaintiff chose to litigate the public meetings issue to a final judgment in the writ of review proceeding while also separately litigating its public meetings claim. It thus assumed the risk that a decision on that issue would preclude its public meetings claim. Because plaintiff litigated the issue to a final judgment in the writ of review proceeding, the second requirement of a final judgment is satisfied.

We conclude that issue preclusion barred plaintiff from relitigating the issue of whether defendants intentionally and willfully violated ORS 192.630(2) in its public meetings action. Because of that conclusion, we need not address plaintiff's remaining argument concerning claim preclusion. The trial court did not err in granting defendants' motion to dismiss plaintiff's public meetings action.

Affirmed.