Argued and submitted March 5, affirmed April 4, reconsideration denied May 30, petition for review denied July 3, 1990 (310 Or 133)

# URTON,
*Appellant,*

*v.*

# HUDSON,
*Respondent.*

## (86-0108; CA A50616)

790 P2d 12

Robert K. Udziela, Portland, argued the cause for appellant. With him on the briefs was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

E. Richard Bodyfelt, Portland, argued the cause for respondent. On the brief were Roger K. Stroup and Bodyfelt, Mount, Stroup & Chamberlain, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

## RICHARDSON, P. J.

Plaintiff brought this wrongful death action, seeking damages for the decedent's death in an airplane crash while he was a "guest passenger" of defendant's decedent. She appeals a judgment for defendant based on a jury verdict.

■■ The parties stipulate that there was evidence from which the jury could find that the pilot was negligent. However, under ORS 30.115, the Guest Passenger Statute, proof of gross negligence is required to establish liability, and the jury specifically found that the pilot was not grossly negligent. Plaintiff contends that ORS 30.115 violates Article I, section 20, the equal privileges and immunities provision of the Oregon Constitution, and the Equal Protection and Due Process Clauses of the federal constitution, by requiring a guest to establish a higher degree of culpability to recover against an airplane operator than against the operators of automobiles and other vehicles that cause injuries. Therefore, plaintiff concludes, the case should have been submitted to the jury solely on an ordinary negligence theory. We hold that the statute is constitutional and affirm.

ORS 30.115 provides, in material part:

> "No person transported by the owner or operator of an aircraft or a watercraft as a guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by the gross negligence or intoxication of the owner or operator."

Before it was amended in 1979, the statute provided the same limits on the liability of owners and operators of motor vehicles and "other means of conveyance."

In *Duerst v. Limbocker,* 269 Or 252, 525 P2d 99 (1974), the court rejected a challenge to the former statute, in which the plaintiff asserted that the disparate treatment of guest passengers and all others who are injured by negligent conduct was a denial of equal protection. The court concluded that the limitation on host liability had a "fair and substantial relation" to the public policy underlying the statute's enactment of protecting "the generous and hospitable host from

being held liable for injuries at the instance of an ungrateful guest." 269 Or at 256. It explained:

"ORS 30.115 distinguishes between injured persons in two ways relevant to plaintiff's case. First, the statute distinguishes between automobile passengers who pay for their ride and those who ride gratuitously. Second, the statute distinguishes between motor vehicle guests and guests in other contexts. It is plaintiff's contention that neither distinction can be justified by the recognized state policies under ORS 30.115. Plaintiff argues that the protection of hospitality cannot support these distinctions because non-vehicular guests are not barred by statute from recovery for injuries caused by the host's negligence and because the prevalence of liability insurance renders such considerations irrelevant. * * *

"* * * * *

"We have no basis for concluding that the moral precept or principle of etiquette relied upon by the legislature did not exist when ORS 30.115 was enacted, nor that it does not exist today. It is the prerogative of the legislature to use proscriptive legislation to foster or perpetuate standards of moral or ethical conduct generally accepted as a part of the mores of the community so long as they do not involve invidious categories or fundamental interests. We are not prepared to say that a host would not feel offended by the ingratitude demonstrated by the guest's institution of a lawsuit for the host's failure to exercise care in the course of extending hospitality to the guest by providing him with transportation. We must conclude, therefore, that the rule adopted in ORS 30.115 cannot be said to be 'wholly unrelated to the objective of that statute.' " 269 Or at 256-58. (Footnotes omitted.)

The court noted that courts of other jurisdictions were divided on the question of the constitutionality of guest passenger statutes, but, insofar as the courts that had reached the opposite conclusion had predicated their decisions on the original or continuing vitality of the policy reasons for the statutes' enactment,

"we share the view expressed in *Tisko v. Harrison,* 500 SW2d 565 at 572 [(Tex Civ App 1973)], that 'we have no reliable information concerning the extent of the evil which prompted enactment of the statute,' nor do we have reliable information as to whether the evil originally seen by the legislature no longer exists.

"The guest passenger statute reflects the legislature's

interpretation of the moral sense of the community. For us to strike down the statute would require us to say that we, rather than the legislature, can better discern the community standard of morality. This is plainly presumptuous and contrary to our often pronounced pledge of judicial self-restraint." 269 Or at 260.

The Supreme Court has adhered to or discussed the holding of *Duerst v. Limbocker, supra,* with favor at least six times since it was decided. Most recently, it said in *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982), in the context of a discussion of Article I, section 20, and the Equal Protection Clause:

"The notion that constitutional equality in tort law must be judged by the sole test of the plaintiff's harm was rejected when this court held that a guest in an automobile could be held to proving greater negligence by the driver than one who is not a guest, or a guest injured in a different setting. The analysis in that 1974 decision was based primarily on federal equal protection concepts, and no more recent decision of the United States Supreme Court has been cited to us as requiring a different result in the present case." 293 Or at 568. (Footnote omitted.)

Plaintiff argues that *Duerst v. Limbocker, supra,* is not controlling on the Article I, section 20, issue here, because it was, in the main, an application of the federal constitution. She also argues that, because the statute and the classification that she challenges are not precisely the same as the ones considered in *Duerst,* it is not controlling on the Equal Protection Clause issue either. It is correct that *Duerst* is not *controlling.* However, for the reasons discussed below, the lines that plaintiff draws between this case and *Duerst* are more differences than distinctions. Moreover, *Duerst* is only one of a long line of Oregon cases that have rejected equal privileges and immunities and equal protection challenges to statutes that distinguish between the litigation rights and opportunities of different categories of tort plaintiffs.

That line of cases has lengthened since the parties submitted their briefs, with the Supreme Court's decisions in *Hale v. Port of Portland,* 308 Or 508, 783 P2d 506 (1989) (ORS 30.270(1)(b), placing $100,000 limit on recovery by victims of "governmentally inflicted torts," does not violate Article I, section 20, or Fourteenth Amendment); *Sealey v. Hicks,* 309

Or 387, 788 P2d 435 (1990) (ORS 30.905 does not violate the equality requirement of either constitution, although its repose period affects some persons injured by defective products differently from others so injured and it treats all persons injured by products differently from the way persons injured in other ways are treated by other statutes); *Van Wormer v. City of Salem,* 309 Or 404, 788 P2d 443 (1990) (Article I, section 20, is not violated by shorter limitation period ORS 30.275(8) prescribes for wrongful death actions under Tort Claims Act than ORS 30.020(1) provides for wrongful death actions generally). The court noted in *Van Wormer:*

> "Plaintiff alternatively argues that, even if the legislature can justify some discrimination in favor of governmental bodies in a wrongful death action, 'all of the possible justifications for the discriminatory statute of limitations of the Oregon Torts Claims Act were satisfied by the notice of claim filed by decedent's personal representative.' This argument presupposes that this court has some role, beyond the Article I, section 20 analysis already set forth, in examining the propriety or desirability of particular pieces of legislation that arguably create 'classes.' But we do not have such a role. Plaintiff is inviting this court to substitute its judgment for that of the legislature. We decline the invitation." 309 Or at 409. (Footnote omitted.)

Our inquiries under Article I, section 20, are (1) whether the statute grants a privilege or immunity, (2) whether it discriminates against a class that exists apart from the statute itself and, if so, (3) whether the distinction "between the classes is either impermissibly based on persons' immutable characteristics, which reflect 'invidious' social or political premises, or has no rational foundation in light of the state's purpose." *Jungen v. State of Oregon,* 94 Or App 101, 105, 764 P2d 938 (1988), *rev den* 307 Or 658 (1989).[1] We assume that the answers to the first two questions are yes, although the second question is close. *See Sealey v. Hicks, supra,* 309 Or at 397. The answer to the first part of the third question is clear: ORS 30.115 makes no distinction based on

---

[1] Plaintiff argues that the "balancing test" suggested in *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976), rather than the test we describe, is the proper one. To whatever extent the answer was not already clear, *Hale v. Port of Portland, supra,* 308 Or at 524, establishes that the balancing test is no longer viable for purposes of Article I, section 20, analysis.

the immutable characteristics of persons who happen to be injured in planes rather than cars.

█       The decisive question is, therefore, whether the different treatment of airplane guest passengers and others, under the statute, lacks any rational foundation in the light of the state's purpose. Plaintiff argues that the "hospitality/ ingratitude" rationale is questionable and, in any event,

> "the rationale cannot be sustained when its reach is limited to one small, specialized class. As the overwhelming majority of guests involved in accidents (those in motor vehicles) are now not subject to the Act, an irrational discrimination between Oregon citizens—motor vehicle victims and airplane victims—has been created by the legislature.
>
>     "* * * * *
>
> "* * * [E]ven if the criteria of guest/host and non-guest/host discrimination is permissible on a preservation of hospitality theory, it cannot stand when it is inconsistently applied to the different classes of tort victims subject to that criteria, as the statute now requires."

*Duerst v. Limbocker, supra,* dispositively establishes that the hospitality/ingratitude policy serves as a rational link between the legislative purpose and the original statutory distinction between all guest passengers and all other tort victims. Plaintiff postulates that that policy cannot rationally be applied differently to different guest passengers, solely on the basis of the kinds of conveyances in which they are guests, and that it therefore cannot salvage the disparate treatment of airplane and automobile guest passengers. However, the legislature could have concluded, *inter alia,* that the two are distinguishable, because automobile owners and drivers are subject to comprehensive Oregon statutory financial responsibility requirements; non-commercial airplane owners and operators are not. It therefore could have reasoned that automobile hosts would suffer little ingratitude, because the guests' claims should generally be insured, while the same would not as often or as necessarily be true in the airplane context. Thus, even if the hospitality/ingratitude rationale were the only one that could be offered to support the statute, it suffices as a rational foundation for the different treatment of airplane guest passengers and automobile guest passengers

as well as all other tort victims. There is no violation of Article I, section 20.[2]

For the same reasons, there is a rational basis for the distinction, and the statute is therefore consistent with the Equal Protection Clause.[3]

Plaintiff's due process argument, that the statute arbitrarily and irrationally distinguishes among different kinds of guest passengers, is also wrong for the same reasons.

Affirmed.

---

[2] Defendant points to rational distinctions, in addition to the one that we have mentioned, for the different treatment of airplane and automobile guest passengers. Many of her examples are derived from Vetri, "The Case for Repeal of the Oregon Guest Passenger Legislation," 13 Will L J 53 (1976). She argues that the widespread availability of automobiles, as distinct from airplanes, makes the limited liability provision unnecessary to encourage access to (and hospitality in) automobiles. She also refers to possible conflicts between a guest passenger rule for automobiles and the "no-fault," personal injury protection and contribution statutes. Other rational justifications for the distinction are possible. We confine ourselves to one in the text, because that is all it takes.

[3] Plaintiff argues that the classification requires either strict or *heightened* scrutiny *and* a higher threshold of justification than the rational basis test. She is incorrect. *See Sealey v. Hicks, supra*, 309 Or at 398.