Argued and submitted July 15, affirmed October 21, 1998, petition for review denied February 23, 1999 (328 Or 330)

SOUTHERN WASCO COUNTY
AMBULANCE SERVICE, INC.,
Voelz Oil & Land Survey, Inc.,
and Chinook Marketing, Inc.,
*Plaintiffs,*

*and*

Paul TOCHEN,
dba PT Enterprises,
Steve Wilmarth, Judy Tuininga,
Don Giles Enterprises, Inc.,
Diphi Enterprises, Inc.,
dba Herb's Kwik Mart,
successor-in-interest to Chinook Marketing, Inc.,
*Appellants,*

*v.*

STATE OF OREGON,
by and through L. R. Howland,
Superintendent,
Department of State Police,
and Robert Punuccio,
State Fire Marshall,
Division of State Fire Marshall,
*Respondent.*

(C950217CV; CA A96490)

968 P2d 848

Helen T. Dziuba, argued the cause for appellants. With her on the brief was Roger K. Harris.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Justin R. Boose, Certified Law Student.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Plaintiffs seek a declaratory judgment that the legislative classifications regarding self-service gasoline dispensing under ORS 480.345 through 480.355 violate Article I, section 20, of the Oregon Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. ORS 28.010 *et seq.* In addition, plaintiffs argue that the exceptions found in those provisions are unconstitutionally vague and represent an unconstitutional delegation of legislative authority. Before the trial court, both parties moved for summary judgment. The court denied plaintiffs' motion and granted the state's motion for summary judgment. ORCP 47. Plaintiffs appeal, and we affirm.

On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law. *Atlantic Richfield Co. v. Greene*, 100 Or App 16, 19, 784 P2d 442 (1989), *rev den* 309 Or 698 (1990). The facts are not in dispute. Therefore, we address only whether the trial court erred as a matter of law.

Plaintiffs include three consumers and two sellers of gasoline products. This is not the first time that Article I, section 20, and Equal Protection Clause challenges have been made pertaining to self-service gasoline legislation and regulations. *See Ag West Supply v. Hall*, 126 Or App 475, 480, 482, 869 P2d 383 (1994) (holding that the exemption for existing customers under ORS 480.360 did not make a distinction based on a cognizable class under Article I, section 20, and that the exemption was rational in light of the legislative purpose); *Atlantic Richfield Co.*, 100 Or App at 18-20 (holding that the distinction between retail and nonretail sellers is not unconstitutional under Article I, section 20, and that the prohibition against self-service of gasoline had a rational basis). Plaintiffs contend that the facts and claims in this appeal are significantly different from those cases. Further, plaintiffs encourage us to dispense with the "true class" analysis used historically in Article I, section 20, cases and advocate a restrictive scope to the "rational basis" analysis that we have employed previously. We are not persuaded

that our method of analysis under Article I, section 20, should be modified.

**1.** Article I, section 20, provides, "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." In order to prevail under the Article I, section 20, "class or citizens" provision, plaintiffs must show:

> "(1) that another group has been granted a 'privilege' or 'immunity' which their group has not been granted, (2) that [the statute at issue] discriminates against a 'true class' on the basis of characteristics which they have apart from that statute * * *, and (3) that the distinction between the classes is either impermissibly based on persons' immutable characteristics, which reflect 'invidious' social or political premises, or has no rational foundation in light of the state's purpose." *Jungen v. State of Oregon*, 94 Or App 101, 105, 764 P2d 938 (1988), *rev den* 307 Or 658, *cert den* 493 US 933 (1989) (citations omitted).

Even if plaintiffs' arguments are well taken that they are members of "true classes,"[1] their claims fail if the statutes have a rational basis. We therefore turn to the issue of whether the statutes have a rational foundation in light of the purpose of the legislation, because that issue is dispositive.

---

[1] We direct plaintiffs to then Professor Hans Linde's admonition: "If the constitutional command to grant privileges or immunities equally to all citizens 'upon the same terms' called merely for a logical manipulation of verbal categories, it would be meaningless. The search is always for the *relevant* terms, the meaningful categories. * * * [A] litigant cannot, merely by such a phrasing of the relevant class, impel a court to test constitutional equality of policy at that conceptual level, or to preclude lawmakers from dealing piecemeal with one part of one specific version of that general problem at a time." *Without "Due Process,"* 49 Or Law Rev 125, 143 (1970).

For example, one of the plaintiffs argues that he is deprived of the privilege of self-service gasoline because he has chosen to use natural gas rather than diesel fuel to heat his office building. He argues that if he had chosen to use diesel fuel, he could have combined the amount of diesel fuel with his gasoline purchases and have met the gallonage requirements of ORS 480.345. We question whether under those circumstances, that this plaintiff could reasonably maintain that he is a member of a true class based on antecedent characteristics not defined by the statute itself. Nonetheless, the gallonage requirement has a rational basis as explained below.

Plaintiffs argue that the *only* purpose for ORS 480.310 to 480.385 is for the safety of consumers. The state responds:

> "One has only to read ORS 480.315, however, to discern that safety is not the only objective the legislative [*sic*] declared it was seeking to advance by enacting a general prohibition balanced by certain enumerated exceptions. The legislature's detailed declaration of the public policies sought to be served, including economic considerations, is critical in resolving this case."

ORS 480.315 provides:

> "The Legislative Assembly declares that, except as provided in ORS 480.345 to 480.385, it is in the public interest to maintain a prohibition on the self-service dispensing of Class 1 flammable liquids at retail. The Legislative Assembly finds and declares that:
>
> "(1) The dispensing of Class 1 flammable liquids by dispensers properly trained in appropriate safety procedures reduces fire hazards directly associated with the dispensing of Class 1 flammable liquids;
>
> "(2) Appropriate safety standards often are unenforceable at retail self-service stations in other states because cashiers are often unable to maintain a clear view of and give undivided attention to the dispensing of Class 1 flammable liquids by customers;
>
> "(3) Higher liability insurance rates charged to retail self-service stations reflect the dangers posed to customers when they leave their vehicles to dispense Class 1 flammable liquids, such as the increased risk of crime and the increased risk of personal injury resulting from slipping on slick surfaces;
>
> "(4) The dangers of crime and slick surfaces described in subsection (3) of this section are enhanced because Oregon's weather is uniquely adverse, causing wet pavement and reduced visibility;
>
> "(5) The dangers described in subsection (3) of this section are heightened when the customer is a senior citizen or is disabled, especially if the customer uses a mobility aid, such as a wheelchair, walker, cane or crutches;

"(6) Attempts by other states to require the providing of aid to senior citizens and the disabled in the self-service dispensing of Class 1 flammable liquids at retail have failed, and therefore, senior citizens and the disabled must pay the higher costs of full service;

"(7) Exposure to toxic fumes represents a health hazard to customers dispensing Class 1 flammable liquids;

"(8) The hazard described in subsection (7) of this section is heightened when the customer is pregnant;

"(9) The exposure to Class 1 flammable liquids through dispensing should, in general, be limited to as few individuals as possible, such as gasoline station owners and their employees or other trained and certified dispensers;

"(10) The significantly higher prices typically charged for full-service fuel dispensing in states where self-service is permitted at retail:

"(a) Discriminate against customers with lower incomes, who are under greater economic pressure to subject themselves to the inconvenience and hazards of self-service;

"(b) Discriminate against customers who are elderly or handicapped who are unable to serve themselves and so must pay the significantly higher prices; and

"(c) Increases self-service dispensing and thereby decreases maintenance checks by attendants, which results in neglect of maintenance, which endangers both the customer and other motorists and results in unnecessary and costly repairs;

"(11) The increased use of self-service at retail in other states has contributed to diminishing the availability of automotive repair facilities at gasoline stations;

"(12) Self-service dispensing at retail in other states does not provide a sustained reduction in fuel prices charged to customers;

"(13) A general prohibition of self-service dispensing of Class 1 flammable liquids by the general public promotes public welfare by providing increased safety and convenience without causing economic harm to the public in general;

"(14) Self-service dispensing at retail contributes to unemployment, particularly among young people;

"(15) Self-service dispensing at retail presents a health hazard and unreasonable discomfort to the handicapped, to elderly persons, small children and those susceptible to respiratory diseases;

"(16) The federal Americans with Disabilities Act, Public Law 101-336, requires that equal access be provided to disabled persons at retail gasoline stations; and

"(17) Small children left unattended when customers leave to make payment at retail self-service stations creates a dangerous situation."

In light of ORS 480.315 and our holding in *Atlantic Richfield Co.*, plaintiffs concede that the legislature rationally could be concerned about the safety of those who dispense gasoline. However, they argue that none of the statutory exceptions to the general prohibition against self-service gasoline are consistent with the concern about consumer safety except for ORS 480.345(5). That statute provides for the dispensing of gasoline by nonretail customers who have satisfied safety training requirements in compliance with rules of the State Fire Marshal. The result of plaintiffs' argument, if adopted, is that all other statutory exceptions would be declared void; while, the retention of the safety-training provision would mean that self-service would remain generally prohibited except for those who participated in safety training.[2]

The 1991 Legislature enacted the statutes in dispute in this case through Senate Bill 1215. It appears from the legislative history underlying the bill that the majority of the bill was intended to address problems raised by federal mandates from the Environmental Protection Agency (EPA). Testimony, House Business and Consumer Affairs Committee, SB 1215, June 4, 1991, Ex D (statement of Senator Jim Hill). Further, the testimony reveals that the legislation was the

---

[2] At this time, safety training appears to consist of having the nonretail customer read a short pamphlet.

result of two years of effort and compromise by a group consisting of the State Fire Marshal, major oil companies, gasoline dealers, cardlock operators, agricultural cooperatives and others. *Id.* Ramey Stroud, Chief Deputy State Fire Marshal, summarized the contents of the bill:

> "[T]he primary rule of no self service gasoline dispensing in Oregon is preserved. The ban on self service is embodied in ORS 480.330 and is not changed by this measure. In other words, there shall be no self-service by the general public.

> "Sections 48-59 of SB-1215-A do, however, clarify legislative intent as it relates to nonretail dispensing locations. The ultimate purpose of this clarification is to specify who may lawfully use cardlock fueling facilities in Oregon and, thus, respond to allegations of unlawful abuse made by a number of retail dealers." Testimony, House Business and Consumer Affairs Committee, SB 1215, June 4, 1991, Ex H.

Plaintiffs claim that ORS 480.345 and ORS 480.355, which clarify who can purchase self-service gasoline, distinguish irrationally between: (1) businesses that purchase 2,400 gallons of gasoline or more per year and those that purchase less, ORS 480.345(2); (2) farming businesses purchasing gasoline and nonfarming businesses, ORS 480.345(2)(a); (3) businesses, units of government, and nonprofit organizations and individual purchasers, ORS 480.345(3); (4) gasoline stations that are further than seven miles from another retail gasoline station and those that are within seven miles of each other, ORS 480.355(3)(a); and (5) nonretail gasoline sellers and retail sellers, ORS 480.310(2). As explained below, it is apparent from our survey of legislative history that the legislature had more than safety concerns in mind when it promulgated the statutes that plaintiffs challenge. We are mindful that it is not for this court to decide which "legislative choice was the best one, or whether it, in fact, accomplished its goal." *Ag West*, 126 Or App at 482. Moreover, the fact that plaintiffs would have enacted different legislation, had they been the legislature, does not mean that the statutes violate Article I, section 20, or the Equal

Protection Clause.[3] Therefore, we will evaluate the distinctions created by the exceptions to self-service dispensing to determine if the distinctions have any rational basis at all.[4]

■ Under ORS 480.345, the first condition that must be met by consumers in order to dispense their own gas is to purchase at least 2,400 gallons of gasoline per year. Only farming businesses and governmental agencies providing emergency services are exempted from that requirement. ORS 480.345(2) provides:

> "After April 1, 1992, a nonretail customer shall purchase at least 2,400 gallons of Class 1 flammable liquids or diesel fuel from any source during a 12-month period or, if the amount of such liquids or fuel purchased is less than 2,400 gallons annually, file documentation that:
>
> "(a) The fuel qualifies as a deductible farming expense on the customer's federal income tax return; or
>
> "(b) The fuel was purchased by a governmental agency providing fire, ambulance or police services."

Consistent with the state's policy that the general public be prohibited from using self-service gasoline, the legislature included a minimum quantity requirement in order to exclude the consumer. One witness explained to the House Business and Consumer Affairs Committee how the 2,400-gallon minimum was chosen:

---

[3] The Fourteenth Amendment provides, in part, that, "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws." In this case, for the reasons the challenged legislation does not violate Article I, section 20, it also survives similar scrutiny under the Equal Protection Clause. *See State v. Freeland,* 295 Or 367, 370, 667 P2d 509 (1993) (stating that the clauses are sufficiently similar so that compliance with Article I, section 20, usually will also satisfy the Fourteenth Amendment).

[4] The state correctly asserts that courts are not limited to statutory language to determine whether a rational basis exists. *Compare Atlantic Richfield Co.,* 100 Or App at 20 (holding that, in an Article I, section 20, case, "we are not limited to the rationale articulated by the legislature") *with PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993) (holding that, in determining the *meaning* of a statute, the court should look first to the language of the statute). Related to the court's ability to explore beyond the bounds of the statutory language for a rational basis is the proposition that a statute does not violate Article I, section 20, or the Fourteenth Amendment if *any* rational basis for the distinction is found. *See, e.g., Kmart Corp. v. Lloyd,* 155 Or App 270, 276, 963 P2d 734 (1998); *Urton v. Hudson,* 101 Or App 147, 153, 790 P2d 12, *rev den* 310 Or 133 (1990); *State v. Day,* 84 Or App 291, 294, 733 P2d 937, *rev den* 303 Or 535 (1987).

"The 2,400-gallon minimum purchasing requirement really derived from the 1969 Attorney General Opinion which was handed down and it said 180 gallons per month was the required amount of fuel to be purchased in order to be considered nonretail. We have a Pacific Pride franchise and Pacific Pride has in their franchise documents a 2,400 minimum as well as the requirement that all customers be commercial.

"* * * * *

"Based on my experience as a retailer in the State of Oregon, the 2,400 gallon figure is about five times what the average retail account would buy. We find in our retail business that an average, typical retail account buys about 40 gallons a month. We thought we would have a 500 percent factor to be certain that any typical retail account is not being served by a cardlock." Tape recording, House Committee on Business and Consumer Affairs, SB 1215, June 10, 1991, Tape 98, Side A (statement of David Harris, President, Harris Oil Company).

Considering Harris's testimony, the 2,400-gallon requirement reasonably could be intended to continue the state's policy of allowing business users to purchase self-service gasoline while continuing to prohibit the general public from self-service dispensing. In *Atlantic Richfield,* we held that the legislature, "rationally could have concluded that persons dispensing gasoline in the course and scope of employment would be more likely to do it safely." 100 Or App at 20. That holding resolves plaintiffs' argument to the contrary regarding Senate Bill 1215.

■ We next inquire whether exempting farming businesses from the 2,400-gallon requirement has a rational basis.[5] This exemption must be considered in the context of Senate Bill 1215's attempt to address new EPA mandates for the removal, clean-up, and replacement of underground storage tanks at retail gasoline stations. The legislature heard testimony that many farms and ranches that previously had their own underground fuel storage tanks would have to depend on self-service gasoline as a result of EPA rules. Tape

[5] Plaintiffs do not challenge the constitutionality of ORS 480.345(2)(b), which allows an exemption from the 2,400-gallon requirement for governmental agencies providing emergency services.

recording, House Committee on Business and Consumer Affairs, SB 1215, June 4, 1991, Tape 91, Side B (statement of Representative Chuck Norris). Stroud also testified that there had been a reduction in storage tanks on farms over the years as a result of the existence of other fueling options such as cardlock facilities. Tape recording, House Committee on Business and Consumer Affairs, SB 1215, June 6, 1991, Tape 92, Side B. In addition, the legislature considered testimony by agricultural cooperatives, who raised concerns about the availability of fuel to rural farms and businesses. Testimony, House Business and Consumer Affairs Committee, SB 1215, June 6, 1991, Ex V (statement of John McCulley) and Ex W (statement of Rick Jacobson). Consistent with the EPA's requirements and the state's concern about the availability of gasoline to farms and ranches, the legislature rationally could have provided the exemption from the 2,400-gallon requirement in order to ensure gasoline availability from sources other than storage tanks that would be eliminated.

■　　The next two conditions that a consumer must meet in order to self-dispense gasoline are that the consumer be employed by and operating a vehicle used by a business, government agency, nonprofit or charitable organization. ORS 480.345 provides, in part:

> "(3)　The nonretail customer shall provide a federal employer identification number or equivalent documentation to indicate participation in a business or employment with a government agency or nonprofit or charitable organization;

> "(4)　The nonretail customer * * * shall be employed by a business, government agency or nonprofit or charitable organization and shall dispense Class 1 flammable liquids only into the fuel tank of a motor vehicle or other container owned and used by the business, government agency or nonprofit or charitable organization."

These conditions help implement the state's policy of allowing businesses and organizations to participate in self-service dispensing, while prohibiting the general public from doing the same. As with the 2,400-gallon requirement, the legislature rationally could have concluded that employees dispensing gasoline during the course of their employment into

company cars create fewer safety concerns compared to dispensing by individuals for general consumption.[6]

**5.** Plaintiffs also challenge the distinction between gasoline stations that are further than seven miles from another retail gasoline station and those that are within seven miles of each other. ORS 480.355 provides, in part:

"(1) Notwithstanding ORS 480.345, upon application from the owner or operator of a nonretail facility, the State Fire Marshal may issue a conditional use license under which the nonretail facility may permit persons who are not qualified as nonretail customers under ORS 480.345(2) to (4) to dispense Class 1 flammable liquids at a nonretail facility.

"* * * * *

"(3) The State Fire Marshal may issue a conditional use license under this section if the State Fire Marshal determines that:

"(a) There is no facility where Class 1 flammable liquids are dispensed by attendants at retail within seven miles of the nonretail facility, and other undue hardship conditions exist, as may be determined by the State Fire Marshal by rule."

This exception, often referred to as the "sole provider" provision in the legislative hearings, appears to have been drafted in response to concerns about the economic viability of rural gasoline stations and the availability of gasoline to motorists. Testimony, House Business and Consumer Affairs Committee, SB 1215, June 4, 1991, Ex H (statement of Ramey Stroud). The legislature considered statistics gathered by the Oregon Department of Energy that showed the number of miles that drivers encountered between stations in rural areas of the state and indicated that a shortage of gasoline stations existed in eastern counties of the state. Testimony, House Business and Consumer Affairs Committee, SB 1215, June 6, 1991, Ex T (presented by Scott Bartlett). *See*

___
[6] The state correctly asserts that distinctions between individuals and governmental entities do not violate Article I, section 20, because units of government are not "citizens" for purposes of privileges and immunities analysis. *See Hale v. Port of Portland*, 308 Or 508, 524, 783 P2d 506 (1989).

*also* tape recording, House Committee on Business and Consumer Affairs, SB 1215, June 10, 1991, Tape 98, Side A (statement of David Harris, President, Harris Oil Company) (explaining that historically the "wagon rule" reflected a nine-mile distance between towns, which was the distance a wagon team could go in a day); tape recording, House Committee on Business and Consumer Affairs, SB 1215, June 25, 1991, Tape 110, Side A (discussion between committee members debating whether the proposed ten-mile condition should remain or be lowered). We conclude that the legislature rationally could distinguish between gasoline stations further than seven miles apart and those within seven miles of each other, in light of concerns about availability of gasoline to rural consumers.

■ To the extent that plaintiffs challenge the distinction between nonretail gasoline sellers and retail sellers, ORS 480.310(2) and ORS 480.350, our reasoning in *Atlantic Richfield Co.* applies. At the time that those plaintiffs sought declaratory relief, the general prohibition preventing retail gasoline stations from allowing consumers to dispense gasoline found in ORS 480.330 had been in place since 1951. An interpretation by the Attorney General of the statutes identified nonretail sellers to whom the prohibition did not apply. Declining to decide on the correctness of the Attorney General's interpretation, we concluded that, "the distinction between retail and nonretail sellers is a distinction created entirely by the statutory scheme the plaintiffs seek to invalidate." *Atlantic Richfield Co.*, 100 Or App at 20. We further concluded that the legislature rationally could distinguish between retail and nonretail dispensing and give more weight to the safety concerns of retail customers than nonretail customers. Therefore, plaintiffs' Article I, section 20, challenge failed not only because retail and nonretail sellers were not "true classes" but because the distinction had a rational basis. *Id.* In light of our survey of the legislative history of Senate Bill 1215, we rule that the holding in *Atlantic Richfield Co.* applies to the same contention raised in this case.

■■ Plaintiffs also claim that, as individuals, they have been singled out for discriminatory treatment under the statutes by being denied the privilege of engaging in self-service.

Article I, section 20, requires equality of treatment for any individual "citizen" as well as any "class of citizens." A "privilege" for purposes of Article I, section 20, has the same meaning whether it arises in the context of a claim of class discrimination or individual discrimination. *City of Salem v. Bruner*, 299 Or 262, 267-69, 702 P2d 70 (1985). Even if one of the plaintiffs could show that it had been discriminated against as an individual, the inquiry is the same: Are there defensible criteria that distinguish between individuals who can participate in self-service and those who cannot, which are administered equally to any citizen? For the reasons previously mentioned, the challenged statutes satisfy those requirements.

■ Plaintiffs also argue that the contested statutes are "void for vagueness" and represent an unconstitutional delegation of legislative authority to the State Fire Marshal. Although plaintiffs' arguments are, in part, imprecise, we examine their possible merits as we understand their ramifications. *See Megdal v. Board of Dental Examiners*, 288 Or 293, 296-303, 605 P2d 273 (1980) (holding that "vagueness" challenges to a statute do not have constitutional status of their own and must be grounded in a constitutional provision).

■ In *State v. Cornell/Pinnell*, 304 Or 27, 29-30, 741 P2d 501 (1987), the court held:

> "A criminal statute violates Article I, sections 20 and 21, of the Oregon Constitution, if it is so vague that it allows a judge or jury unbridled discretion to decide what conduct is prohibited in a given case. * * * Under the federal constitution, due process requires that a statute defining criminal conduct be sufficiently explicit to provide notice of the forbidden conduct." (Citations omitted.)

We have not found an Oregon appellate decision that determines whether a civil penalty similar to the fine that the State Fire Marshal may impose under ORS 480.385 for violation of the contested statutes triggers the fair notice requirement under the Due Process Clause. *See e.g., State v. Sarriugarte*, 66 Or App 406, 408, 674 P2d 82 (1984) (declining to reach that issue because the challenged statute was not impermissibly vague); *Groener v. Oregon Gov't Ethics*

*Comm.*, 59 Or App 459, 469, 651 P2d 736 (1982) (questioning whether the analysis applies to a civil sanction, but deciding that even if it did, the challenged statutes gave fair warning). Under both the federal and state constitutions, a "vagueness" challenge to a criminal statute requires a determination of whether the statute is constitutional *as applied* to a defendant *under the specific circumstances. See State v. Warden,* 136 Or App 268, 274, 901 P2d 900 (1995) (citing *State v. Butterfield,* 128 Or App 1, 8, 874 P2d 1339, *rev den* 319 Or 625 (1994)).[7] Assuming, without deciding, that a civil penalty as distinguished from a criminal sanction triggers "vagueness" considerations, such a challenge requires that the statute providing for the penalty has been applied to the plaintiffs. Here, plaintiffs do not allege that the State Fire Marshal has imposed a fine on any of them or that they are threatened with the imposition of a fine.

■ A vague statute can also be challenged on the grounds that it violates Article III, section 1, and Article IV, section 1, of the Oregon Constitution. In that context, the issue is "[about] the constitutional allocation of powers, not of procedural fairness to particular persons." *Anderson v. Peden,* 284 Or 313, 325, 587 P2d 59 (1978).[8] Therefore, we must address whether the contested statutes, "contain sufficient guidelines for the exercise of the administrative decision-making authority." *Pre-Hospital Medical Services v. Malheur County,* 134 Or App 481, 492, 896 P2d 585 (1995). ORS 480.345 contains a number of conditions that must be met by a nonretail customer in order for the customer to be allowed to use a self-service gasoline facility. ORS 480.350 details the requirements for a gasoline station that applies for a license to become a nonretail facility. The statute also provides that the State Fire Marshal "shall" issue the license upon compliance with the listed requirements. ORS 480.355(3)(a) authorizes the issuance of "conditional use"

---

[7] In this context, the only time a *facial* vagueness challenge is reviewed is when the First Amendment is implicated. *Butterfield,* 128 Or App at 7-8.

[8] For instance, plaintiffs attack the "retail" and "nonretail" nomenclature that the legislature has used in the statutes. Their arguments in that regard are irrelevant to a challenge based on an unconstitutional allocation of powers because, "legislation is not unconstitutional merely because the terms of the legislative directive are general and vague." *Anderson,* 284 Or at 325.

licenses. The statute permits the issuance of a license under circumstances where "[t]here is no facility where Class 1 flammable liquids are dispensed by attendants at retail within seven miles of the nonretail facility, and other undue hardship conditions exists, as may be determined by the State Fire Marshal by rule." ORS 480.355(3)(a). We perceive no unconstitutional allocation of authority by the legislature to the State Fire Marshal because of these statutes. They, and the remainder of the challenged statutes, contain sufficient guidelines for the State Fire Marshal to exercise decision-making authority.

 Finally, an attack on the vagueness of the statute can be reached if there is a risk that *ad hoc* policymaking will violate Article I, section 20, by granting a privilege to some citizen or class of citizen on unequal terms. *Anderson*, 284 Or at 326. The court in *Anderson* acknowledged, "[t]hat risk is real in all discretionary administration. But an attack based on this premise must show that in fact a policy unlawfully discriminating in favor of some persons against others either has been adopted or has been followed in practice." *Id.* Plaintiffs make that specific claim:

"But for the state fire marshal's unwillingness to allow plaintiffs and others to join the class of persons who are safety trained and can therefore self serve, plaintiffs could receive the same privileges now given to only some of the members of the class. The refusal and 'haphazard' administration of this exception by the state fire marshal violates the Oregon Constitution."

However, plaintiffs offer no evidence in this summary judgment proceeding that the authority given to the State Fire Marshal to grant licenses under the challenged statutes has been applied in a haphazard or arbitrary manner.[9] Further, we do not understand the statutes to grant the State Fire Marshal authority to allow individual customers to engage in self-service gasoline merely by providing safety training as

---

[9] We note that plaintiff DiPhi Enterprises, Inc., apparently has not applied for a license and is instead relying on the application of the previous owner of its gasoline station. None of the other plaintiffs raises a claim that it has sought either a license for "dual operation" or "conditional use." If plaintiffs are claiming that licenses have been improperly denied for "dual operations" or "conditional use," they are required to exhaust their administrative remedies under ORS 183.413.

plaintiffs contend. Rather, ORS 483.345(6) provides that owners or operators of gasoline dispensing businesses shall enter into written agreements with nonretail customers who conform to all of the statutory requirements under the statute. The State Fire Marshal is authorized to license and regulate owners and operators rather than individual customers. Therefore, on this record, plaintiffs have not demonstrated an unconstitutional application of the challenged statutes. We conclude that plaintiffs' vagueness arguments fail on all of the possible grounds for raising a constitutional violation.

Affirmed.